STATE of Iowa, Appellee,

v.

William S. DIBLE, Appellant.

No. 94–233.

Supreme Court of Iowa.

Sept. 20, 1995.

Linda Del Gallo, State Appellate Defender, and Sharon Ruth Stevens, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Bridget A. Chambers and Charles N. Thoman, Assistant Attorneys General, and Thomas S. Mullin, County Attorney, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, NEUMAN, ANDREASEN, and TERNUS, JJ.

McGIVERIN, Chief Justice.

Defendant William S. Dible appeals from judgment and sentences, following a bench trial, entered upon his convictions of first-degree burglary, second-degree burglary, second-degree arson, and first-degree criminal mischief. He contends that there is insufficient evidence to support the first-degree burglary conviction under Iowa Code sections 713.1 and 713.3 (1993) and that his attorney rendered ineffective assistance in violation of his state and federal constitutional right to counsel as to all the charges. We find no reversible error and, therefore, affirm the trial court's judgments.

I. *Background facts and proceedings.* Defendant William S. Dible and Sundy Gaskell dated for several weeks. Sundy attempted to break off the relationship but Dible was resistant.

On June 10, 1993, Sundy and her daughter, Melissa Gaskell, left their home at about 8:40 p.m. to go to a movie at a theater in a mall in Sioux City. As Dible and Sundy had talked earlier that day, Dible knew of Sundy's movie plans.

When Sundy and Melissa returned to their vehicle after the movie, two of the tires were flat. They got a ride home from someone else and on the way Dible's vehicle pulled up beside them at a red traffic signal.

Dible was seen at Max's, a bar in the same mall as the theater Sundy and Melissa had attended, before 9:00 p.m. on June 10. He left and returned between 10:30 and 11:00 p.m. When he returned he was sweaty and dirty and had a strong odor of diesel fuel.

Police and fire personnel were called to Sundy's at about 11:30 p.m. in response to a fire call. When they entered the house they found diesel fuel on the floor throughout the house. The principal fire originated in the northeast bedroom on the second floor, Sundy's bedroom. A blue plastic container with a small amount of diesel fuel was found outside the house near a window that had been broken.

When Sundy and Melissa arrived home from the movie theater at approximately 12:30 a.m. on June 11, they saw the officials and learned someone had deliberately set a fire in their house.

At about 3:30 a.m., shortly after police and fire personnel left, Dible walked into Sundy's house. Sundy and Melissa were sitting in the nook area off the kitchen. Sundy immediately ordered Dible out of the house. She later recalled his pants had diesel fuel on them.

Melissa also asked Dible to leave and attempted to walk him to the front door. Reluctant to leave, Dible was near the front door when Sundy telephoned 911. Dible saw Sundy on the telephone and returned to the kitchen. He demanded to know who Sundy was calling, and, when she did not respond, he threw her on the table and began hitting her. Dible struck Melissa when she tried to intervene. The two women escaped and ran to a neighbor's house. Dible followed, threatening them. He left the scene before police arrived.

Dible was later found and arrested. He had diesel fuel on his pants at the time. Dible's vehicle was found two or three blocks from Sundy's house. A white glove identical to one found in Sundy's house was found in his vehicle.

Dible was charged with, among other things, first-degree burglary, second-degree burglary, second-degree arson, and first-degree criminal mischief. A bent screwdriver, consistent with punctures to Sundy's vehicle's tires, and stick matches, like ones found at the fire scene, were found in Dible's vehicle while his attorney was searching the vehicle at his request. Those items were found in the presence of a peace officer and a prosecuting attorney and later introduced in evidence at Dible's bench trial.

Following the bench trial, the trial court entered its findings of fact and conclusions of law. Regarding the first-degree burglary charge under sections 713.1 and 713.3, the trial court found that the State failed to prove that Dible intended to commit assault when he first entered the house at 3:30 a.m.

on June 11. However, the court found he did intend to commit assault when he reentered the nook area of the kitchen where Sundy was telephoning 911, at which time he remained in the house without Sundy's permission. With this finding, the court concluded Dible was guilty of first-degree burglary in violation of Iowa Code sections 713.1 and 713.3. Dible was also convicted of second-degree burglary, *id.* sections 713.1 and 713.5, second-degree arson, *id.* sections 712.1 and 712.3, and first-degree criminal mischief, *id.* sections 716.1 and 716.3.

The court entered judgment and sentences upon the convictions. Defendant filed a motion for a new trial, asserting, among other things, that the trial court's conclusion that he intended an assault at the time he remained in the house was insufficient to sustain the first-degree burglary conviction pursuant to sections 713.1 and 713.3. He also contends his trial attorney provided ineffective assistance of counsel, including several alleged conflicts of interest and breaches of duty, in violation of his federal and state constitutional right to counsel.

The trial court held an evidentiary hearing on the motion and made detailed findings of fact. In its ruling, the trial court found beyond a reasonable doubt that defendant acted with the requisite intent to assault for first-degree burglary when he remained over at the victim's residence. Furthermore, the trial court concluded that defendant's trial attorney did not fail to perform any essential services and that defendant was not prejudiced by his trial attorney's decisions.

Defendant appealed.

II. *Sufficiency of the evidence for first-degree burglary conviction.* Defendant first challenges the sufficiency of the evidence to sustain his first-degree burglary conviction under Iowa Code sections 713.1 and 713.3. His challenge to the evidence is based on a legal argument. He contends that his intent to assault must have existed at the precise time he first unlawfully remained in the residence. He asserts, however, that he did not form his intent to assault until a later time.[1] We conclude this argument lacks merit.

1. Defendant also contends that the evidence is

insufficient to prove that at the time he entered

A. *Scope of review.* Our scope of review is on assigned error only. Iowa R.App.P. 4.

■ The standard of review in challenging the sufficiency of the evidence is well established. *See State v. Robinson,* 288 N.W.2d 337, 338 (Iowa 1980). We will uphold a verdict where there is substantial evidence in the record tending to support the charge. *Id.*

■ "In a criminal case tried to the court, as in a civil case tried to the court at law, the court's verdict is like a jury verdict." *City of Des Moines v. Huff,* 232 N.W.2d 574, 576 (Iowa 1975). Upon review of the sufficiency of evidence to support the verdict, we view the evidence in the light most favorable to the verdict, and we accept as established all reasonable inferences tending to support it. *Id.* Findings of the trial court are to be broadly and liberally construed, rather than narrowly or technically, and, in case of ambiguity, we will construe findings to uphold, rather than defeat, the judgment. *Id.* Direct and circumstantial evidence are equally probative so long as the evidence raises "a fair inference of guilt and [does] more than create speculation, suspicion, or conjecture." *State v. Hamilton,* 309 N.W.2d 471, 479 (Iowa 1981). It is necessary to consider all the evidence in the record and not just the evidence supporting the verdict to determine whether there is substantial evidence to support the charge. *State v. Bass,* 349 N.W.2d 498, 500 (Iowa 1984) (quoting *State v. Blair,* 347 N.W.2d 416, 419 (Iowa 1984)). Substantial evidence means evidence which would convince a rational factfinder that the defendant is guilty beyond a reasonable doubt. *State v. LeGear,* 346 N.W.2d 21, 23 (Iowa 1984).

■ Of course, none of this precludes inquiry as to whether the trial court applied erroneous rules of law which materially affected its decision. *Huff,* 232 N.W.2d at 576.

We are not bound by the trial court's conclusions of law. *Id.*

B. *Analysis of the sufficiency of the evidence and defendant's continuous state of unlawfully remaining over.* Defendant was charged with first-degree burglary under two theories:

(1) that Dible "entered" his former girlfriend's, Sundy's, residence uninvited with intent to commit an assault on one or more of the residents therein, Sundy and Melissa; and, in the alternative,

(2) that Dible "remained over" in Sundy's residence with intent to commit an assault and intentionally inflicting bodily injury on the residents in violation of Iowa Code sections 713.1 and 713.3.

Burglary is defined in Iowa Code section 713.1. That section provides:

> Any person, having the intent to commit a felony, assault or theft therein, who having no right, license or privilege to do so, *enters an occupied structure,* such occupied structure not being open to the public, *or who remains therein* after it is closed to the public or *after the person's right, license or privilege to be there has expired,* or any person having such intent who breaks an occupied structure, *commits burglary.*

(Emphasis added.) One commits burglary in the first degree, if among other alternatives, one "intentionally or recklessly inflicts bodily injury on any person." Id. § 713.3.

■ Defendant challenges the sufficiency of the evidence to prove that at the time he remained over at Sundy's residence he had the specific intent to commit an assault. Defendant contends that he first decided to "remain over" when Sundy and then Melissa asked him to leave and that only later, when Sundy was telephoning 911, he formed the intent to commit an assault. He argues that without evidence that his decision to remain over and his formation of an intent to assault

---

the residence he had the specific intent to commit an assault. This argument does not help defendant because the trial court agreed with defendant on this point, stating:

> There is some evidence tending to support an inference that the defendant intended to commit an assault when he first entered the

house. The State has not, however, proved by evidence beyond a reasonable doubt that the defendant had that intent at that time.

Because the trial court expressly stated that it did not base defendant's conviction on any intent at the time he entered, we do not further address this argument.

occurred contemporaneously, his first-degree burglary conviction cannot stand.

The State disagrees with defendant and rejects his argument as being based on the invalid premise that "remaining over" is confined to that exact moment when a defendant's right, license, or permission to be on the premises terminates and the defendant makes the decision not to leave the premises. The State counters with a different interpretation of the legal standard set forth in the statute, arguing that "remaining over" is a continuous state which begins at the moment a defendant decides to unlawfully remain on the premises and ends only when the defendant actually leaves the premises. During that time, the State contends, a defendant makes a continuous decision to stay on the premises unlawfully. If, at any point on this continuum, a defendant forms the intent to remain on the premises with the intent to commit an assault or theft, at that point, the defendant commits burglary.

■ Like the trial court, we find the State's argument persuasive. The statute does not contemplate the defendant's decision to remain as occurring at a specific point in time. *See* Iowa Code § 713.1. Rather, the statute contemplates the decision as a continuous event, beginning when a defendant determines to unlawfully remain on the premises and ending when the defendant leaves the premises. *Cf. State v. Franklin,* 368 N.W.2d 716, 719–20 (Iowa 1985) (defendant convicted of having requisite intent to commit first-degree burglary by picking up machete after entering an occupied structure); *State v. Riley,* 454 N.W.2d 595, 596 (Iowa App.1990) (defendant convicted of having requisite intent to commit both burglary in the first degree and sexual abuse after breaking into victim's home carrying a hammer). One commentary indicates the language of Iowa's burglary statute supports the State's argument that "remaining over" occurs over a continuum of time:

> [W]ill the [S]tate have to prove that [the defendant] formed the necessary intent at the time his presence in the place became unlawful, or will it be sufficient to prove that at some time while he was unlawfully present he formed the intent ... to commit an assault? The [statutory] language suggests the latter.

John L. Yeager & Ronald L. Carlson, 4 Iowa Practice, *Criminal Law & Procedure* § 294 (1979).

Viewed in this manner, Dible's decision to remain may have begun when he refused to comply with Sundy and Melissa's request that he leave, but it remained intact from the time he returned to the kitchen up until the time he left Sundy's home. Because he also formed an intent to assault when he returned to the kitchen, Dible satisfied the statute's contemporaneous intent requirement: he was remaining over and doing so with the intent to commit an assault.

Defendant disagrees with this interpretation of the statute and urges us to follow two New York decisions, *People v. Gaines,* 74 N.Y.2d 358, 547 N.Y.S.2d 620, 546 N.E.2d 913 (1980) and *People v. Konikov,* 160 A.D.2d 146, 559 N.Y.S.2d 901 (1990). Without unduly extending this opinion, we conclude these cases are factually distinguishable and not persuasive here for defendant.

■ III. *Ineffective assistance of counsel claim.* Next, defendant claims he was denied effective assistance of counsel in violation of his federal and state constitutional right to counsel. Specifically, he asserts that his trial attorney had several conflicts of interest and breached numerous essential duties in violation of his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution and article I, section 10 of the Iowa Constitution. Because the trial court held an evidentiary hearing on defendant's motion for new trial concerning this matter and made extensive findings of fact, we review defendant's ineffective assistance claim on direct appeal. *See State v. Hepperle,* 530 N.W.2d 735, 739 (Iowa 1995).

Upon our de novo review, we conclude that defendant's ineffective assistance claim lacks merit because defendant has failed to meet his burden of proof.

■ A. *Scope of review.* Defendant has alleged a violation of constitutional rights. Therefore, we must make an independent

evaluation of the totality of the circumstances. *Id.* "This is tantamount to a de novo review." *Id.*

We have recently set forth the general principles guiding our review of an ineffective assistance claim in *Hepperle,* 530 N.W.2d at 739, so we do not repeat them all here. We do reiterate that a presumption exists that counsel is competent and that counsel's conduct falls within the wide range of reasonable, professional assistance. *Id.* Defendant must overcome this presumption and has the burden of establishing ineffective assistance. *Id.* As we stated in *Hepperle,* to meet this burden defendant must prove by a preponderance of the evidence that (1) counsel failed to perform an essential duty and (2) prejudice resulted therefrom. *Id.*

**B.** *Analysis of the effectiveness of defendant's attorney's representation during trial.* Defendant asserts a long list of alleged conflicts of interest and breaches of duty by his trial attorney as follows:

*Alleged Conflicts of Interest*

—protected complainant's interests rather than defendant's, as demonstrated by the attorney's failure to cross-examine the complainant concerning alleged thefts from the hospital where she worked as a nurse;

—believed that defendant should be held accountable for his actions, as demonstrated by the attorney's notes; and

—located evidence, a bent screwdriver and a stick match, used by the prosecution.

*Alleged Breaches of Duties*

—failed to investigate allegations that the complaining witness stole drugs and medical supplies from her employer;

—failed to cross-examine the complaining witness regarding her alleged stealing of drugs and equipment from her employer to assist defendant's brother;

—failed to introduce evidence that the window to complainant's residence appeared to have been broken from the inside;

—failed to introduce evidence of prior tenant's boyfriend's prior break-in of complainant's residence;

—failed to introduce evidence of defendant and Sundy's serious, romantic relationship;

—failed to introduce evidence that a testifying witness was unable to pick defendant from a photo array;

—failed to introduce sufficient testimony about defendant's presence at Max's on the night of the fire;

—failed to introduce evidence that the white glove found in defendant's Jeep did not belong to defendant;

—failed to introduce evidence that Sundy may have planted defendant's glasses at the fire scene; and

—failed to introduce evidence that others had a motive to commit the crimes.

The trial court reviewed each of defendant's assertions and concluded that defendant's trial attorney did not fall below the standard of a reasonably competent attorney. *See Hepperle,* 530 N.W.2d at 739 (stating the "ultimate test for determining whether a defendant has been denied effective assistance of counsel is whether, considering the entire record and all of the circumstances, the attorney's performance was within the range of normal competency"). After making individual analyses and conclusions regarding each of defendant's assertions, the trial court stated:

Mr. Stenander [defendant's trial attorney] exercised his judgment in representing the defendant and the court does not believe that there was any failure to perform an essential service. I would again emphasize it must be kept in mind that Mr. Stenander made his decisions under very difficult circumstances with respect to [the inconsistent facts and unreliable witnesses presented to him] by the defendant.

Therefore, under the first prong of the test stated in *Hepperle,* we agree with the trial court that Dible failed to prove by a preponderance of the evidence that his trial counsel failed to perform an essential duty during the course of the attorney-client relationship.

Turning to the prejudice prong of the ineffective assistance of counsel test, the trial

court easily concluded that not only was there not a reasonable probability that but for the attorney's alleged errors the court would have reached a different verdict, *see State v. Hildebrant,* 405 N.W.2d 839, 841 (Iowa 1987); *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984), but that there was an absolute certainty that the trial attorney's alleged errors did not affect the verdict.[2] In making this conclusion, the trial court stated:

> I don't think that there was—that there would be any judge or a jury that would not conclude that the defendant is the one that committed those offenses. . . .
>
> . . . .
>
> If I look at the matter from the point of view of being the trier of the facts, *I can state with absolute certainty that none of the evidence which has been presented at this hearing on postconviction motions would have made any difference in the verdicts which were reached.*
>
> . . . .
>
> [Also, reviewing] it from the point of view of . . . the effect upon some other hypothetical finder of fact, [a]gain, *the court . . . finds that there is no reasonable probability that any of this evidence would have resulted in a different verdict* because it really just did not tend to cast doubt upon the facts which were decisive in the verdict in this case.

(Emphasis added.)

In sum the trial court concluded:

> [T]he defendant has failed to prove that Mr. Stenander failed to perform an essential service, that his representation was not within the normal realm of competency. [The] [c]ourt also finds that presentation of the evidence which has been presented at this hearing on motions would not have had any reasonable probability of changing the verdict.
>
> . . . .
>
> The court is convinced that the defendant received a fair trial with competent counsel in this case.

Likewise, we are convinced that defendant had competent representation. Defendant has failed to meet either his burden of proving that his trial attorney breached an essential duty or that he was prejudiced by his attorney's representation. As a result, we affirm the trial court's judgment overruling defendant's motion for a new trial.

IV. *Disposition.* Upon our limited review of defendant's sufficiency of the evidence claim, we conclude that substantial evidence supports defendant's conviction of first-degree burglary in violation of Iowa Code sections 713.1 and 713.3. Also, upon our de novo review of his ineffective assistance of counsel claim, we conclude that the trial court did not err in holding the defendant received effective representation at trial. We therefore affirm the trial court's judgments convicting defendant of the several enumerated offenses and overruling his motion for a new trial.

**AFFIRMED.**

---

2. We realize that we have the ability to dispose of an ineffective assistance of counsel claim if the defendant fails to meet either prong of the ineffective assistance of counsel test. *See Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 700; *Hepperle,* 530 N.W.2d at 739. We discuss both the breach of duty and the prejudice prong of the test only because the trial court addressed both prongs and defendant alleges that he does not have to prove prejudice for his conflict of interest claims. *See State v. Duncan,* 435 N.W.2d 384, 386 (Iowa App.1988).