STATE of Iowa, Appellee,

v.

Jason WALKER, Appellant.

No. 98–597.

Supreme Court of Iowa.

Sept. 9, 1999.

Linda Del Gallo, State Appellate Defender, and David Arthur Adams, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Karen Doland, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and D. Raymond Walton, Assistant County Attorney, for appellee.

Considered by CARTER, P.J., and LAVORATO, NEUMAN, TERNUS, and HARRIS,* JJ.

TERNUS, Justice.

The sole issue presented on this appeal is whether a defendant may be convicted of committing burglary by remaining on the premises after his privilege to be there has been revoked where the victim testifies that she did not expressly ask the defendant to leave. We conclude that a revocation of the victim's consent to the defendant's presence may be inferred from the victim's resistance to the defendant's assault on her. Therefore, we affirm the defendant's conviction of burglary in the first degree. *See* Iowa Code §§ 713.1, .3 (1997).

I. *Background Facts and Proceedings.*

In setting forth the pertinent facts, we view the evidence in the light most favorable to the State. *See State v. Hogrefe*, 557 N.W.2d 871, 876 (Iowa 1996). Brenda Hosea testified that the defendant, Jason Walker, was the boyfriend of her friend, Amy Meister. One evening, when Hosea was home alone with her two young children, Walker appeared unexpectedly in the doorway of her living room. She had not heard him come in. Coincidentally, at the time Hosea saw Walker, she was trying to call Amy to ask whether Amy had obtained a job for which she had applied. Hosea sort of laughed when she saw Walker and told him she was just trying to reach "you guys." Hosea testified that Walker had been to her home on one prior

* Retired justice serving as senior judge pursu- ant to Iowa Code section 602.9206 (1999).

occasion with Amy, and initially Hosea thought Amy was with Walker on the evening of the offense.

Hosea stated that Walker, without saying a word, jumped on her, began choking her, and attempted to drag her up the stairs. He held a hammer in his hand. Hosea screamed, yelled for help, and struggled to escape. As Walker dragged her up the stairs, she begged him to let her go, and kept asking him what was wrong with him. Not until Hosea informed him that her mother would soon be there, did Walker put down the hammer and leave. Hosea testified that she did not remember telling Walker to leave.

The State charged Walker with burglary in the first degree while in possession of a dangerous weapon in violation of Iowa Code sections 713.1 and 713.3. The State requested that the jury be instructed on two alternatives of burglary: (1) entering an occupied structure without any right, license, or privilege to do so; and (2) remaining in an occupied structure after one's right, license, or privilege to be there has expired. *See* Iowa Code § 713.1.[1] The defendant's attorney objected to submission of the second alternative, arguing that there was insufficient evidence to support a conviction on that basis. The court submitted both alternatives and the jury returned a general verdict of guilty. Walker appealed.

Walker's appeal was transferred to the court of appeals and that court affirmed his conviction. We granted Walker's application for further review.

II.  *Scope of Review.*

■■■ Challenges to jury instructions are reviewed for correction of errors of law. Iowa R.App. P. 4. We review the trial court's instructions "to determine whether they correctly state the law and are supported by substantial · evidence." *State v. Thompson,* 570 N.W.2d 765, 767 (Iowa 1997). "Evidence is substantial if it would convince a reasonable person of the fact sought to be proven." *Id.*

III.  *Was There Substantial Evidence to Support Submission of the "Remaining Over" Alternative of Burglary?*

■■■ Iowa's burglary statute has two essential elements: (1) the defendant's unlawful presence in or breaking of an occupied structure; and (2) the defendant's intent to commit a felony, assault, or theft in the structure. *See* Iowa Code § 713.1. A defendant's presence is unlawful under the statute if (1) the defendant enters without any "right, license or privilege to do so," or (2) the defendant remains in the structure after the defendant's "right, license or privilege to be there has expired." *Id.* Walker's challenge to the court's instruction is focused on the second alternative of the first element of burglary.

Initially, we observe that the jury could find from Hosea's testimony that Walker originally had a privilege to be in her home. Her testimony that she initially addressed Walker in a friendly manner, thinking that Amy was with him, would support an inference that she was, in effect, consenting to his presence in her home. The dispute centers on whether Hosea ever revoked this consent.

Hosea clearly testified that she never expressly told Walker to leave.[2] She

---

1.  Iowa's burglary statute states:

    Any person, having the intent to commit a felony, assault or theft therein, who, having no right, license or privilege to do so, enters an occupied structure, such occupied structure not being open to the public, *or who remains therein,* after it is closed to the public or *after the person's right, license or privilege to be there has expired,* or any per-

    son having such intent who breaks an occupied structure, commits burglary.
    Iowa Code § 713.1 (emphasis added).

2.  In an argument accepted by the court of appeals, the State relies on the defendant's trial testimony to support the "remaining over" alternative of burglary. Under the defendant's version of these events, he was invited in by Hosea, who proceeded to assault him

merely asked him to stop and asked him to tell her what was wrong, all the while struggling against his assaultive actions. The determinative question, then, is whether a defendant's permission to be on the premises must be expressly revoked, or whether the withdrawal of consent may be implied from the circumstances.[3]

Under circumstances similar to those before us here, other courts have held that a jury may find that the defendant's privilege to be on the premises has been revoked even though the victim did not expressly tell the defendant to leave. *See Ex parte State,* 737 So.2d 480, 483 (Ala.1999); *Ray v. State,* 522 So.2d 963, 967 (Fla.Dist. Ct.App.1988); *Hambrick v. State,* 174 Ga. App. 444, 330 S.E.2d 383, 385–86 (1985); *State v. Felt,* 108 Or.App. 730, 816 P.2d 1213, 1214 (1991); *State v. Collins,* 110 Wash.2d 253, 751 P.2d 837, 841 (1988). These courts have concluded that the victim's resistance to the defendant's actions gives the defendant reason to know that the victim is no longer willing to have the defendant remain on the premises. *See Ex parte State,* 737 So.2d at 483; *Ray,* 522 So.2d at 966–67; *Hambrick,* 330 S.E.2d at 385–86; *Felt,* 816 P.2d at 1214; *Collins,* 751 P.2d at 841. The Georgia Court of Appeals explained its reasoning as follows:

> Although the [defendant] initially had [the victim's] authority to enter and remain for a friendly visit, there was sufficient evidence, including testimony of the victim's struggle with [the defendant], to create a jury question regarding whether the authority to remain ceased at the time the offensive, aggressive behavior began. When [the defen-

dant's] ulterior purpose beyond the bounds of a friendly visit became known to [the victim], who was the source of the authority, and he reacted against it, a reasonable inference could be drawn that the authority to remain ended. [The victim] did not have to shout "Get out!" for this to be so. Yet [the defendant] remained until he got possession of the money, far beyond the time at which the scope of the permission ended.

*Hambrick,* 330 S.E.2d at 385–86.

■ We hold that the victim need not expressly revoke his or her consent to the defendant's presence; it is sufficient that the victim's actions give the defendant reason to know that such consent has been withdrawn. If the defendant remains on the premises after having reason to know he has no right to do so, he has "remained over" and, if, during the time he unlawfully remains on the premises, he forms the requisite intent to commit a felony, assault or theft, the defendant has committed a burglary. *See generally State v. Dible,* 538 N.W.2d 267, 271 (Iowa 1995) (holding that the necessary intent need be present only at some time during the defendant's unlawful presence and not necessarily when the defendant's presence first becomes unlawful).

■ The State argues that "the defendant's license or privilege to enter the home 'expired' when he jumped on top of Hosea and began choking her." We do not agree that permission to be present is automatically revoked once the defendant commences his criminal conduct. The mere commission of a crime in an occupied structure does not automatically constitute

---

with a tire iron. During her assault, Hosea screamed at Walker to leave. Walker testified he immediately headed for the door and left. Contrary to the State's contentions, Walker's version does not support submission of the "remaining over" alternative because, although Hosea expressly told him to leave, i.e., revoked his right to be present, Walker immediately left. Therefore, he did not remain "after [his] right, license or privilege to be there ha[d] expired." Iowa Code § 713.1.

**3.** The burglary statute merely requires that the defendant's right to be on the premises have "expired." *See* Iowa Code § 713.1. The word "expire" means "to come to an end." *Webster's Third New International Dictionary* 801 (unabr. ed.1993). This definition is not enlightening on the issue before us.

a burglary, nor does the defendant's criminal intent substitute for proof that consent to remain has been revoked. *See Ex parte State*, 737 So.2d at 483 (holding that the "commission of a crime, standing alone, is inadequate to support the finding of an unlawful remaining"); *People v. Hutchinson*, 124 Misc.2d 487, 477 N.Y.S.2d 965, 968 (Sup.Ct.1984) (holding that "there must be something more to establish termination of license than the commission of a criminal act or an order to leave after a criminal intention is manifested"); *Collins*, 751 P.2d at 839–40 (rejecting California rule that the formation of a criminal intent automatically renders the defendant's presence unlawful). If the mere commission of a crime or the formation of a criminal intent could be used to support an inference that the defendant's right to be in the premises has been revoked, every offense committed in an occupied structure would be transformed into a burglary.

■ Our decision is not so broad. We merely hold that a jury can find that the defendant's privilege to be on the premises has been withdrawn where the actions of the person giving permission to enter reasonably indicate to the defendant that such permission has been revoked. We conclude that Hosea's actions here are sufficient to support a finding that Walker should have known from her resistance to his assault and her begging of him to stop that he no longer had her permission to be in her home. As other courts have similarly held, she did not have to scream "Get out!" for Walker to know that his right to be present had expired. Therefore, the trial court did not err in submitting the "remaining over" alternative to the jury.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**