# IN THE COURT OF APPEALS OF IOWA

No. 13-0923
Filed May 29, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**STEVEN PAUL SEELYE JR.,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Marshall County, Dale E. Ruigh (bench trial) and James A. McGlynn (sentencing), Judges.


        Steven Paul Seelye Jr., appeals from his convictions and sentences for burglary in the second degree and theft in the fifth degree. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**


        Mark C. Smith, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, Jennifer Miller, County Attorney, and Paul Crawford, Assistant County Attorney, for appellee.


        Considered by Vaitheswaran, P.J., and Mullins and McDonald, JJ.

**MCDONALD, J.**

Following a bench trial, Steven Paul Seelye Jr., was convicted of burglary in the second degree, in violation of Iowa Code sections 713.1 and 713.5 (2011), and theft in the fifth degree, in violation of sections 714.1(1) and 714.2(5). The district court sentenced Seelye as a habitual offender, pursuant to section 902.8, to a term of incarceration not to exceed fifteen years on the burglary conviction and thirty days in jail for the theft conviction, said sentences to run concurrently. The court also imposed but suspended a $1000 fine and surcharge for the burglary conviction. Seelye appeals his convictions and sentences.

I.

The State charged Seelye with burglary in the second degree and theft in the second degree. Seelye waived his right to jury trial and stipulated to being a habitual offender. Prior to trial, the State sought to admit the deposition of victim Terry Dunham in lieu of his in-court testimony, arguing that Terry was unavailable to testify in person due to a medical condition. The district court received the deposition testimony over the defendant's objection.

Terry and Linda Dunham live in a single-family home in Marshalltown. Attached to the home is an enclosed porch. The porch can be entered from the outside through a set of double doors. The home can be entered from the porch through a door leading into the kitchen. The Dunhams are antique collectors. They store some of their antiques in cupboards and shelves located in the enclosed porch.

The Dunhams and Seelye share an interest in antiques and have known each other for many years. Seelye was a regular visitor to the Dunham's home. In the early afternoon of May 28, 2012, Linda was watching television alone in the living room of her home. She saw Seelye pull up to the Dunham's residence and park his truck in the driveway. He exited the truck, entered the porch, and knocked at the kitchen door. Linda ignored the knocking and continued watching television. Three or four minutes later, after not hearing or seeing Seelye leave, Linda looked out the window of the kitchen door into the enclosed porch. She saw Seelye take an antique carpet ball out of a cupboard. When Seelye turned, Linda noticed he also had one of the Dunhams' antique rolling pins tucked under his arm. Seelye left the porch, walked to his truck, opened the door, and started entering the vehicle. Linda ran outside and yelled, "put the stuff back." Seelye then walked back towards Linda. Seelye offered no explanation for his conduct. Linda took the items from him and went back inside. At that time, she noticed other items missing from the porch. Linda phoned Terry, who told her to call law enforcement. She did. Seelye was later arrested and charged.

II.

Seelye challenges the sufficiency of the evidence supporting his burglary and theft convictions. The challenge is properly before the court. *See State v. Abbas,* 561 N.W.2d 72, 74 (Iowa 1997) ("We similarly hold that when a criminal case is tried to the court, a defendant may challenge the sufficiency of the evidence on appeal irrespective of whether a motion for judgment of acquittal was previously made."). "Sufficiency of evidence claims are reviewed for a

correction of errors at law." *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). Where the proceeding was tried to the court, the district court's finding of guilt is binding on us unless we conclude there was not substantial evidence in the record to support such a finding. *See State v. Taft*, 506 N.W.2d 757, 762 (Iowa 1993). "In determining whether there was substantial evidence, we review the record in the light most favorable to the State." *Id.* "Substantial evidence means such evidence as could convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt." *Id.*

## A.

We first address the burglary conviction. In its findings of fact, conclusions of law, and verdicts, the district court concluded the State was required to prove the following elements beyond a reasonable doubt:

> 1. On or about May 28, 2012, Mr. Seelye broke or entered the enclosed porch [of the Dunhams].
> 2. The porch on the residence was an "occupied structure."
> 3. The structure was not open to the public at the time in question.
> 4. Mr. Seelye had no right, license, or privilege to break or enter the porch at the time in question.
> 5. At the time he broke or entered the porch, he had the specific intent to commit a theft from the premises.
> 6. One or more persons were present in the residence during the commission of the burglary.

The district court found that elements 1, 2, 3, and 6 were clearly established beyond a reasonable doubt. Regarding elements 4 and 5, the district court ruled as follows:

> Mr. Seelye did not have the "right, license, or privilege" to enter the porch on the Dunham residence on May 28, 2012. Even if he then had a general license or privilege to enter the porch for the innocent purpose of visiting the Dunhams, Mr. Seelye had no license or privilege to enter for the purpose of stealing things from the

Dunhams. The totality of the evidence also shows that, when he entered the porch, Mr. Seelye had the specific intent to commit a theft from the premises. The facts that the garage was visibly empty and that Mr. Seelye took the items from a cupboard on the porch as soon as no one answered his knock on the kitchen door circumstantially show the required specific intent.

Seelye contends there is insufficient evidence the porch was not open to the public. We agree. While the prosecutor argued the porch was not open to the public and while the district court found the porch was not open to the public, the testimony, even when viewed in the light most favorable to the State, is to the contrary. Linda testified:

> Q: Was your home that day open to the public? That is, could anybody just walk in? A: They could the porch.

The State made no attempt to have Linda clarify or otherwise limit her testimony, and Seelye's attorney did not ask any questions regarding the issue on cross-examination. It is thus uncontroverted that the porch of the Dunham home was "open to the public." Presumably, this would include Seelye.

Even assuming, however, the porch was not open to the public, Seelye contends he specifically had a right, license, or privilege to enter the porch. The State argues that Seelye's right, license, and privilege was limited to those times when the Dunhams were home. According to the State, on the date at issue, Seelye should have known the Dunhams were not home because the garage was empty. Therefore, the State argues, Seelye should have known he did not have permission to enter the porch. It is an interesting argument given that Linda was, in fact, home. Setting aside that fact, the purported limitation on Seelye's

right, license, or privilege to enter the porch is not supported by the record. Linda testified as follows:

> Q. It was not uncommon for Steve Seelye to open [the enclosed porch] door, walk in, and knock on the interior door [leading to the kitchen]? A. Yes.
> Q. So for him to come into your porch and knock on your interior kitchen door . . . was fairly common? A. Yeah. Yes.
> . . . .
> Q. Had you told him prior to May 28, 2012, to not come on your property? A. No.
> Q. Had you ever told him prior to May 28 he did not have permission to enter upon your porch like he had many times before? A. No. He always came in and sat down and visited where we usually were.
> . . . .
> Q. And again, he didn't need to knock; he could just come in [to the enclosed porch] as he pleased? A. Yeah.
> Q. He had permission to do that always? A. Yeah. I mean, there was no reason for him not to.

The purported limitation on the right to enter the porch on only those occasions the Dunhams were home was simply an argument made by the prosecutor during closing argument. The only evidence—not argument—regarding the issue is Linda's testimony, and she agreed Seelye "had permission . . . always" to enter the porch.

The State also argues, and the district court found, that even if the public, including Seelye, had a general right to enter the porch, there is no right, license, or privilege to enter the porch for the purpose of committing a theft. The State's argument is unavailing. "Iowa's burglary statute has two essential elements: (1) the defendant's unlawful presence in or breaking of an occupied structure; and (2) the defendant's intent to commit a felony, assault, or theft in the structure." *State v. Walker*, 600 N.W.2d 606, 608 (Iowa 1999). The State's argument, and

the district court's conclusion, renders the first element a superfluous tautology. We avoid interpreting statutes to render any provision of a statute without meaning. *See State v. Nicoletto*, No. 12-1862, 2014 WL 1400077, at *5 (Iowa Apr. 11, 2014) ("Moreover, we interpret statutes in a manner to avoid absurd results and to avoid rendering any part of an enactment superfluous."). The argument also proves too much because it transforms every felony, assault, or theft occurring inside an occupied structure into a burglary:

> We do not agree that permission to be present is automatically revoked once the defendant commences his criminal conduct. The mere commission of a crime in an occupied structure does not automatically constitute a burglary, nor does the defendant's criminal intent substitute for proof that consent to remain has been revoked . . . . If the mere commission of a crime or the formation of a criminal intent could be used to support an inference that the defendant's right to be in the premises has been revoked, *every offense committed in an occupied structure would be transformed into a burglary*.

*Walker*, 600 N.W.2d at 609-10 (emphasis added).

The district court erred in concluding the defendant's intent to commit a theft inside the porch is, standing alone, sufficient evidence that the defendant possessed no right, license, or privilege to be in the porch. The lawfulness of the entry and the intent of the defendant are separate inquiries. The first relates to and requires evidence regarding the defendant's legal right to enter or remain in the occupied structure. The second relates to and requires evidence regarding the defendant's intended criminal conduct. The distinction between the two elements and the proof required for each has long been recognized in our case law:

> There is no breaking in entering a building or room, and therefore no burglary, *if the person entering has a right so to do, although he may intend to commit, and may actually commit, a felony*, and although he may enter in such a way that there would be a breaking if he had no right to enter . . . .

*State v. Peck*, 539 N.W.2d 170, 173 (Iowa 1995) (emphasis added) (citation omitted); *State v. King*, 344 N.W.2d 562, 563 (Iowa Ct. App. 1983) (finding the State did not prove entry without consent because the defendant had "implied consent to enter" and victims never effectively revoked consent). The distinction is also recognized by leading secondary authority:

> Entering a place where one has a right to be, although with intent to commit a crime, is not burglary, but one having a general right to be in a building may be guilty of burglary where he or she enters at a time or place beyond his or her authority, or remains at a time or place beyond his or her authority.

12A C.J.S. *Burglary* § 25 (2004).

The necessity of evidence establishing both wrongful presence and criminal intent is also recognized in persuasive authority. We find the following analysis persuasive:

> The People reason that a privilege to remain is necessarily conditioned on lawful purpose and behavior, because nobody consents to criminal acts on his or her premises. Thus, once a person with license engages in criminal behavior, consent and hence license is revoked, and the person who entered lawfully thereafter remains unlawfully. This reasoning impermissibly broadens the scope of liability for burglary, making a burglar of anyone who commits a crime on someone else's premises. It erroneously merges two separate and independent elements that must coexist to establish burglary: First, the trespassory element of entry or remaining without license or privilege; Second, intent to commit a crime. An intrusion without license or privilege (unlawful entry) is the distinguishing element, the essence of burglary. It must be established separately and distinctly from the intention to commit a crime. The mere fact that a crime was committed or was

intended is an insufficient basis for finding that the entry or remaining was without privilege or authority.

*People v. Hutchinson*, 477 N.Y.S.2d 965, 967 (N.Y. Sup. Ct. 1984) *aff'd*, 503 N.Y.S.2d 702 (N.Y. App. Div. 1986) (mem.). Other authorities reach the same conclusion. *See State v. Allen*, 110 P.3d 849, 855 (Wash. Ct. App. 2005) ("Essentially, the deputy prosecutor urged the jury to convict Allen of burglary if it found that he had entered each building with the intent to steal. This argument is inconsistent with long-standing Washington law. A lawful entry, even one accompanied by nefarious intent, is not by itself a burglary. Unlawful presence and criminal intent must coincide for a burglary to occur."); *Davis v. State*, 737 So. 2d 480, 484 (Ala. 1999) ("We reiterate that the evidence of a commission of a crime, standing alone, is inadequate to support the finding of an unlawful remaining . . . .").

The State failed to prove beyond a reasonable doubt that the Dunhams' porch was not open to the public. The State also failed to prove Seelye had no right, license, or privilege to enter the porch. The State further failed to prove that Seelye remained in the porch after his right, license, or privilege expired. Accordingly, the State has failed to prove an essential element of the burglary conviction, and the judgment of the district court must be reversed.

B.

Seelye also challenges the sufficiency of the evidence supporting his conviction for theft. To prove theft, the State was required to establish Seelye took possession or control of the property of another with the intent to permanently deprive the owner thereof. *See* Iowa Code § 714.1(1); *State v.*

*Schminkey*, 597 N.W.2d 785, 789 (Iowa 1999). Seelye was charged with theft in the second degree, which required the State to prove the property was in excess of $1000 but not more than $10,000. *See* Iowa Code § 714.2(2). The district court found Seelye guilty of the lesser-included offense of theft in the fifth degree. Theft in the fifth degree requires the property not exceed $200 in value but does not require proof of a minimum value. *See* Iowa Code § 714.2(5).

"Because proof that the defendant acted with the specific purpose of depriving the owner of his property requires a determination of what the defendant was thinking when an act was done, it is seldom capable of being established with direct evidence." *Schminkey*, 597 N.W.2d at 789. "Therefore, the facts and circumstances surrounding the act, as well as any reasonable inferences to be drawn from those facts and circumstances, may be relied upon to ascertain the defendant's intent." *Id.*

Seelye did not have permission to take antiques from the Dunham residence. Linda watched Seelye remove two items from the enclosed porch. Seelye transported the items from the porch to his truck. These are not the types of items that one might take for temporary use like, for example, a motor vehicle. Linda watched Seelye start to enter the truck and prepare to leave from which it can be reasonably inferred that Seelye intended to depart the residence with the items. When Linda demanded that Seelye put the items back, he approached her. Linda took the items from Seelye's hands. Seelye offered no explanation for his conduct to Linda upon being confronted by her. The minimum value of the items Seelye took is immaterial to the conviction. Viewing the evidence in the

light most favorable to the State, there was sufficient evidence that Seelye took the antiques with the intent to permanently deprive the Dunhams of them.

## III.

Seelye raises several other challenges to his convictions and sentences.

## A.

Seelye contends the district court erred in admitting into evidence Terry Dunham's deposition transcript. The deposition was inadmissible hearsay, he argues. Admission of the same, he further argues, violated his constitutional right to confront and cross-examine the witness. "[W]e review the admission of hearsay for errors at law, while Confrontation Clause issues are reviewed de novo." *State v. Brown*, 656 N.W.2d 355, 361 (Iowa 2003). "[B]oth the hearsay rule and the Confrontation Clause operate to prevent the wrongful admission of testimony to the prejudice of a defendant." *Id.* "Neither rule requires the reversal of a judgment if the defendant suffered no prejudice or harm from the admission of inadmissible testimony." *Id.* The *Brown* court set forth criteria to determine prejudice and harm:

> There are two distinct tests to apply to determine whether the admission of inadmissible testimony is non-prejudicial or harmless under the two rules. In the hearsay context, where substantially the same evidence is in the record, erroneously admitted evidence will not be considered prejudicial. For Confrontation Clause purposes, the State must establish that the error was harmless beyond a reasonable doubt. In making the Confrontation Clause assessment, a court must look at: [T]he importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the

> extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Id.* at 361-62 (citations and quotation marks omitted) (alteration in original). Where we conclude the testimony was harmless beyond a reasonable doubt, we need not address the issue of whether the witness was unavailable within the meaning of Rule of Evidence 5.804(b)(1).

We conclude the admission of the deposition testimony was harmless beyond a reasonable doubt. First, Seelye's burglary conviction is not supported by sufficient evidence and must be reversed. Thus, the relevant inquiry is whether the testimony was harmless beyond a reasonable doubt with respect to the theft conviction. Terry's deposition testimony provided background information regarding the Dunhams' relationship with Seelye. Because Terry was not at the house when Seelye removed the items, Terry was unable to provide any information based on personal knowledge regarding Seelye's conduct that day. Terry also testified briefly on the value of the items removed from the enclosed porch. Linda testified to the same.

Not only was Terry's testimony concerning the theft "substantially the same evidence" as what Linda provided in the record, but Terry's testimony was not relied upon by the court, and in fact, was found to be unpersuasive. The court rejected Terry's valuation of the missing items, finding Seelye guilty only of the lesser-included offense that does not require proof of value. Under the factors reiterated in *Brown*, it is clear the State proved any error in having Terry not testify at trial was harmless beyond a reasonable doubt. *See State v. Weaver*, 608 N.W.2d 797, 805-06 (Iowa 2000) (finding allegedly inadmissible

hearsay testimony harmless because "it is clear from the court's findings in this jury-waived trial that it did not rely on this evidence"); *State v. Farnum*, 397 N.W.2d 744, 746 (Iowa 1986) ("[T]here is less need for strict application of evidence rules in a bench trial.").

## B.

Seelye contends imposition and suspension of the $1000 fine for the burglary conviction was illegal. The State concedes this point. An illegal sentence is one not authorized by statute. *See Tindell v. State*, 629 N.W.2d 357, 359 (Iowa 2011); *see also* Iowa R. Crim. P. 2.24(5)(a) ("The court may correct an illegal sentence at any time."). We agree that imposition and suspension of the fine was impermissible where the defendant was sentenced as a habitual offender and no statutory authority apart from the general sentencing provisions provided for a fine. *See* Iowa Code § 902.8; *State v. Halterman*, 630 N.W.2d 611, 613-14 (Iowa Ct. App. 2001). Because we conclude the burglary conviction is not supported by sufficient evidence and reverse the conviction, the argument regarding the sentence is now moot.

## C.

Seelye also contends his convictions and sentences are illegal because the district court did not pronounce the verdict in open court. First, the issue is now moot with respect to Seelye's burglary conviction. Second, the defendant failed to preserve error on the issue. Third, at trial, Seelye explicitly consented to the court returning its verdict in writing and then reading the verdicts at the time of sentencing. He thus waived the right. Fourth, the district court did read the

verdict at sentencing. As such, Seelye suffered no prejudice and is not entitled to relief. *See State v. Jones*, 817 N.W.2d 11, 21 (Iowa 2012) ("We also agree with the state court decisions holding the defendant is not entitled to further relief if the court later reads the verdict at sentencing.").

## IV.

We affirm Seelye's conviction and sentence for theft in the fifth degree. We reverse the judgment of the district court with respect to Seelye's conviction for burglary in the second degree and remand this matter for entry of judgment of acquittal.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**