# IN THE COURT OF APPEALS OF IOWA

No. 24-0187
Filed May 7, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TRASHON DAVONTEZ MONTGOMERY,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, David P. Odekirk, Judge.

        Trashon Montgomery appeals his convictions for first-degree burglary and willful injury causing serious injury.  **AFFIRMED.**

        R. Ben Stone of Parrish Kruidenier, LLP, Des Moines, for appellant.

        Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee.

        Considered without oral argument by Tabor, C.J., Schumacher, J., and Mullins, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**MULLINS, Senior Judge.**

A jury convicted Trashon Montgomery of first-degree burglary and willful injury causing serious injury. In this appeal, Montgomery argues the district court abused its discretion by admitting evidence of his prior assaults against the victim. He also challenges the sufficiency of the evidence to support the jury's verdict on both counts. We discern no abuse of discretion in the court's evidentiary ruling and find substantial evidence supports the contested elements of each offense. We therefore affirm Montgomery's convictions.

**I.       Background Facts and Proceedings**

In May 2020, twenty-five-year-old T.J. and her older sister spent an evening drinking and having fun at a couple of bars in the Waterloo area. Around 2:00 a.m., they made their way back to T.J.'s apartment, where T.J. asked her sister to come inside. T.J. had recently left a tumultuous relationship with Trashon Montgomery. She knew Montgomery was upset, and she worried he might be waiting in the apartment. He had "gotten into [her] house before." T.J.'s sister looked through all the rooms and checked the window locks before heading home.

Still uneasy, T.J. asked a recent acquaintance, Mike M., to come over. The two friends stayed up for a while drinking and talking. Mike noticed T.J.'s phone light up with multiple incoming calls, which T.J. ignored. She told Mike about Montgomery. Mike asked if Montgomery was "going to be showing up," and T.J. told him no. Eventually, T.J. and Mike fell asleep.

The pair awoke to find Montgomery inside the apartment, "stomping" on T.J.'s head and face. She raised an arm to block Montgomery's attack as he demanded to know why she was partially unclothed. According to T.J.,

Montgomery then grabbed her hair, drug her to a bedroom, and struck her in the face with "full-on punches." Mike wrestled with Montgomery but failed to break up the attack. He left the apartment and called 911 from his vehicle.

Police arrived shortly thereafter. An officer who approached the front door heard a woman crying in the apartment. When Montgomery stepped outside, the officers noticed blood on his sleeves and shoes. They found T.J. with a swollen and bloody face, favoring one arm. In an interview at the scene, Montgomery told police he kicked T.J. once because she had grabbed his leg. T.J. was taken by ambulance to a local hospital, where she was treated for lacerations to her face and a broken wrist. Police found drops of blood and a broken mirror inside the apartment, but there was no evidence of a forced entry.

The State charged Montgomery with first-degree burglary, in violation of Iowa Code section 713.3 (2020), and willful injury causing serious injury, in violation of Iowa Code section 708.4(1). Prior to trial, the State served a notice of intent to introduce evidence of two prior altercations between Montgomery and T.J. One was an assault in 2017 that left T.J. with a broken jaw. The other was an April 2020 incident in which T.J. alleged Montgomery entered her apartment "without [her] permission" and "ripped a braid out of [her] hair." Montgomery pled guilty to a willful injury charge following the incident in 2017. A burglary charge for the April 2020 assault remained pending at the time of trial in this case.

The district court allowed testimony regarding both incidents over Montgomery's objection. Following a three-day trial, the jury found him guilty as charged. Montgomery now appeals, arguing he is entitled to a new trial due to the

improper admission of testimony regarding the prior assaults. Alternatively, he contends the trial evidence was insufficient to support his convictions.

## II.     Standards of Review

We review evidentiary rulings for abuse of discretion. *State v. Thoren*, 970 N.W.2d 611, 620 (Iowa 2022). "A district court abuses its discretion when it bases its decisions on grounds or reasons clearly untenable or to an extent that is clearly unreasonable," including when the court "bases its conclusions on an erroneous application of the law." *Id.* (citation omitted).

Challenges to the sufficiency of evidence are reviewed for correction of errors at law. *State v. Rooney*, 862 N.W.2d 367, 371 (Iowa 2015). The jury's verdict must stand if, "when viewed in the light most favorable to the State, [the evidence] can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *State v. Wilson*, 941 N.W.2d 579, 584 (Iowa 2020) (citation omitted).

## III.     Prior Assaults

Montgomery contends the district court abused its discretion by allowing T.J. to testify that she had been assaulted by Montgomery on two other occasions. Under our rules, evidence of a prior crime, wrong, or other bad act "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Iowa R. Evid. 5.404(b)(1). This rule against "propensity" evidence reflects the common-law principle that "one crime cannot be proved by proof of another." *Thoren*, 970 N.W.2d at 625 (citation omitted).

Evidence of a prior bad act is not always propensity evidence. Proof of a prior wrong "may be admissible for another purpose such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Iowa R. Evid. 5.404(b)(2). To fall within this exception, "the evidence must be relevant and material to a *legitimate* issue in the case other than a general propensity to commit wrongful acts." *State v. Sullivan*, 679 N.W.2d 19, 25 (Iowa 2004).[1] The burden is on the State to "articulate a valid, noncharacter theory of admissibility." *Thoren*, 970 N.W.2d at 625 (citation omitted).

The State argues Montgomery's prior assaults were probative of his criminal intent. It compares this case to *State v. Taylor*, 689 N.W.2d 116 (Iowa 2004), where a husband was charged with burglary after breaking a car window in a fit of rage and pulling his wife out of the vehicle. The husband alleged he broke the window by accident and therefore lacked the necessary intent to commit burglary. *Taylor*, 689 N.W.2d at 124; *see also* Iowa Code § 713.1 (defining burglary as breaking or entering an occupied structure with "the intent to commit a felony, assault or theft therein"). To rebut that defense, the State introduced proof of two previous outbursts in which the husband had assaulted or threatened the wife. *Taylor*, 689 N.W.2d at 122. Our supreme court upheld admission of this evidence under rule 5.404(b), explaining "the defendant's intent was a legitimate, contested

---

[1] In addition to a legitimate non-propensity purpose, there also must be "clear proof the individual against whom the evidence is offered committed the bad act." *Sullivan*, 679 N.W.2d at 25. Although he introduced evidence at trial suggesting T.J. later recanted certain allegations about the April 2020 assault, Montgomery does not contest the clear-proof requirement on appeal. Therefore, we do not consider it. *See State v. Jackson*, 4 N.W.3d 298, 311 (Iowa 2024) ("A party forfeits an issue on appeal when the party fails to clearly identify an issue on appeal.").

issue at trial." *Id.* at 125. It emphasized the relevance of prior aggression to show intent in domestic abuse cases:

> [T]here is a logical connection between a defendant's intent at the time of a crime, when the crime involves a person to whom he has an emotional attachment, and how the defendant has reacted to disappointment or anger directed at that person in the past, including acts of violence, rage, and physical control. In other words, the defendant's prior conduct directed to the victim of a crime, whether loving or violent, reveals the emotional relationship between the defendant and the victim and is highly probative of the defendant's probable motivation and intent in subsequent situations.

*Id.*; *see also State v. Rodriquez*, 636 N.W.2d 234, 242 (Iowa 2001). Distinguishing cases involving "completely unconnected" past crimes, the court noted a defendant's history of violence against the same domestic partner "sets the stage for their later interaction." *Taylor*, 689 N.W.2d at 128 n.6.

We find *Taylor* instructive here. According to the district court's marshalling instruction, to convict Montgomery of burglary the State had to show he entered T.J.'s home without "permission or authority" and "with the specific intent to commit an assault . . . or theft." Montgomery denied these elements at trial. He elicited evidence suggesting his entry into the apartment was at T.J.'s express invitation or with her standing implied consent. He also asserted there was "no evidence" that he had entered the apartment with an intent to commit an assault. Given these defenses, T.J.'s testimony that Montgomery had assaulted her in the past—including on one occasion in which he entered her home without permission—was relevant to "a legitimate, contested issue at trial." *Id.* at 125. Intent was not "merely a formal issue" in this case. *See Thoren*, 970 N.W.2d at 630 (citation omitted) (finding prior bad acts evidence was not offered for a non-propensity purpose where a defendant "raised no defenses about intent"). The State was entitled to

introduce this evidence of similar past offenses to support its allegation that Montgomery entered the apartment without permission and with the intent to assault T.J.

Even when prior-bad-acts evidence is admissible for a non-propensity purpose, the court still must consider whether "its probative value is substantially outweighed by the danger of unfair prejudice to the defendant." *Sullivan*, 679 N.W.2d at 25 (citing Iowa R. Evid. 5.403). We look to "the actual need for the evidence in light of the issues and the other evidence available." *Taylor*, 689 N.W.2d at 129 (cleaned up). Montgomery argues that evidence of the prior assaults was of limited relevance, given the ample other proof establishing his "presence in the apartment." But intent, not entry, was the contested issue at trial. "[T]he element of intent in burglary is seldom susceptible to proof by direct evidence," and it must typically be shown by "circumstantial evidence and inferences drawn therefrom." *State v. Olson*, 373 N.W.2d 135, 136 (Iowa 1985). T.J.'s testimony that previous relationship disputes culminated in violence by Montgomery provided important context to his late-night phone calls and circumstantially supported the State's theory that Montgomery entered T.J.'s apartment out of rage—not by invitation. *See State v. Brown*, No. 19-1426, 2020 WL 6157790, at *5 (Iowa Ct. App. Oct. 21, 2020) (finding evidence of a no-contact order was "highly relevant" to showing the defendant's "intent when he entered the house while he knew [the victim] was present").

Montgomery argues this probative value was substantially outweighed by the prejudicial effect of T.J.'s testimony, given the "accumulative nature of the two incidents." He cites *State v. Reynolds*, 765 N.W.2d 283, 290–92 (Iowa 2009), an

assault case in which our supreme court found evidence of eleven prior altercations between the defendant and victim were probative of a "personal animus" but inadmissible on prejudice grounds. We find the present facts distinguishable. Montgomery's prior bad acts were far fewer in number. And in *Reynolds*, other evidence established that the victim had an affair with the defendant's wife—a fact that left "little need" to show motive by prior assaults. 765 N.W.2d at 291. T.J.'s testimony that Montgomery had lashed out before was the primary evidence supporting an inference of criminal intent.

Some amount of prejudice is inherent to prior-bad-acts evidence. *Taylor*, 689 N.W.2d at 130. The pertinent question is whether the prejudice was "unfair"— that is, whether the evidence was so inflammatory as to "prompt the fact finder to make a decision based on an emotional response to the defendant." *Id.* Here, T.J.'s testimony regarding Montgomery's prior assaults was relatively succinct; it was not the focus of the trial. *See State v. White*, 668 N.W.2d 850, 855 (Iowa 2003) (finding prior-bad-acts evidence was not likely to rouse jury hostility where, "[w]ithin the scope of the entire trial, the State spent little time developing" the evidence). And the district court instructed the jury that it was only to consider the evidence for non-propensity purposes. Mindful of the leeway we must give the district court in weighing probative value against probable dangers, *see Taylor*, 689 N.W.2d at 124, we find no abuse of discretion in the admission of testimony regarding Montgomery's prior assaults on T.J.

## IV.    Sufficiency of the Evidence

Montgomery also challenges the sufficiency of the evidence to support the jury's verdict on both of his charges. In considering a sufficiency-of-the-evidence

challenge, we do not reweigh the evidence or resolve questions of credibility—those decisions are for the factfinder. *See State v. Cahill,* 972 N.W.2d 19, 34 (Iowa 2022). Our only task is to determine whether substantial evidence supports the jury's conclusion. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). "Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury is free to reject certain evidence, and credit other evidence." *Id.* (cleaned up).

Montgomery first contends that his burglary conviction must be vacated because the State failed to show he lacked a "right, license, or privilege" to enter T.J.'s apartment. Iowa Code § 713.1. He emphasizes that police found no signs of a forced entry and that, although Montgomery had been invited to T.J.'s apartment in the past, there was no evidence of "a text or email that indicated he was not welcome to enter" again. Montgomery also points to T.J.'s admissions on cross-examination that the former couple continued to talk in the weeks after their break-up and that she had signed a notarized statement after the April 2020 assault acknowledging Montgomery did not need her permission to enter her apartment.

Despite these facts, the State introduced substantial evidence that Montgomery's entry was without permission. T.J. testified that she was compelled by Montgomery to provide the written statement after he was charged with burglary for the April 2020 incident. She unequivocally denied inviting him over on the night of the incident in this case. And although it is unclear how Montgomery managed to get inside the apartment, T.J. testified that she had not given Montgomery a key. She acknowledged being intoxicated at the time Mike arrived and was unable to

recall whether she locked the deadbolt behind him. According to T.J., Montgomery knew that the front door could be opened with a credit card when the deadbolt was not engaged. We do not disturb the jury's decision to credit T.J.'s testimony over Montgomery's suggestions of a consensual entry.[2] *See Sanford*, 814 N.W.2d at 615.

Montgomery next argues that the State failed to show T.J. sustained a "serious injury"—a requirement of his conviction under Iowa Code section 708.4(1). Our code defines a serious injury to include any injury which causes "serious permanent disfigurement" or "protracted loss or impairment of the function of any bodily member or organ." Iowa Code § 702.18(1)(b). T.J. sustained contusions, face lacerations, and a broken wrist as a result of Montgomery's attack. Photographs of her face and arms before and after the assault were admitted into evidence, along with medical records describing her treatment in the emergency room. She remained in a cast for six weeks and continued to struggle with wrist pain after that. T.J. also testified that she "had to cover [her] face for months" to hide bruises caused by Montgomery. At trial in October 2023, her left cheek remained scarred from the May 2020 incident.

Not all bone fractures may constitute a serious injury, but a jury question exists when the fracture "substantially impair[s] the victim's health." *State v.*

---

[2] We also note the jury was instructed that the "right, license, or privilege" element could be satisfied if it found Montgomery's "permission or authority to remain in the residence had ended." Mike testified that T.J. pleaded for Montgomery to leave during the attack. So, even if Montgomery had permission to enter the apartment, there was substantial evidence to support a finding that any purported permission was revoked upon T.J.'s emphatic objection to his presence there. *See State v. Walker*, 600 N.W.2d 606, 609–10 (Iowa 1999).

*Welton*, 300 N.W.2d 157, 161 (Iowa 1981). Broken bones inhibiting a victim's functions for several weeks may qualify as protracted impairment. *See id.* (concluding a jury could find a jaw fracture preventing the victim from chewing food for six weeks was a serious injury); *State v. Mott*, 635 N.W.2d 301, 302 (Iowa Ct. App. 2001) (finding a broken jaw set with steel plates qualified as a serious injury); *State v. Hilpipre*, 395 N.W.2d 899, 904 (Iowa Ct. App. 1986) (finding a protracted loss of bodily function where the victim sustained broken ribs causing severe pain for six weeks). Likewise, scarring can be a permanent disfigurement, although it is not per se proof of serious injury. *State v. Hanes*, 790 N.W.2d 545, 554 (Iowa 2010) (explaining it is for "the jury to determine whether a scar constitutes a serious permanent disfigurement").

Montgomery contends the impairment to T.J.'s wrist was not sufficiently protracted to qualify as a serious injury. But T.J. testified that she did not regain regular use of her left arm until "a month or two" after her cast was removed. And despite Montgomery's assertion that the scar on T.J.'s cheek is not a serious permanent disfigurement, T.J. continued to use make-up to hide the unwanted appearance of the scar at the time of trial. Viewing the evidence in the light most favorable to the State, a rational juror could find that T.J. suffered a serious injury.

## V. Conclusion

We find no abuse of discretion in the admission of testimony regarding Montgomery's prior assaults, and we find sufficient evidence to convict Montgomery on each of the elements he challenges on appeal. We therefore affirm Montgomery's convictions.

**AFFIRMED.**