[Nos. 908-2; 909-2.    Division Two.'    April 25, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. RICHARD LESLIE GREGOR, *Appellant*.

*Dean Morgan* of *Clark County Legal Defender Services,* for appellant.

*James E. Carty, Prosecuting Attorney,* and *William R. McCann, Deputy,* for respondent.

ARMSTRONG, J.—In this case Richard Leslie Gregor appeals from convictions of second-degree burglary and credit card theft. Defendant contends that the evidence was insufficient to establish second-degree burglary because consent to enter the dwelling given by one of the residents constitutes a valid defense, and because the evidence failed to establish which portions of the house were occupied by

each of the residents living in the dwelling. Defendant also contends that the credit card theft statute is unconstitutional as an arbitrary and unreasonable exercise of the state's police power. We do not agree with either contention.

The record discloses that on October 13, 1971, defendant Gregor, Jack Hammond and John Ewald entered a residence inhabited by Jack Hammond and his wife, and by the victim of the burglary, Fred Griffith, and his wife. The record reflects that the two couples were sharing the rent on the house, as well as other living expenses.

Mr. Hammond testified that when he and his companions arrived at the residence he shared with the Griffiths, he attempted to kick in the door. One companion, John Ewald, was wearing rubber gloves. When the attempt to break the door failed, Hammond used his key to open a padlock on the door, and then replaced the lock, evidently to make it look as though someone had broken into the home. When the police arrived the door was open and damaged, leading the investigating officer to conclude that the home was forcefully entered.

Most of the items taken from the residence were possessions of Mr. Griffith. He testified that virtually everything he owned was removed from the home. These items included a television removed from the living room of the house, as well as a stereo, records, sleeping bag and water bed. The only items belonging to Mr. Hammond that were taken were a .22 caliber rifle and a bayonet.

According to the testimony of Mr. Hammond, he and his two companions had agreed, prior to arriving at the residence, to steal the items, sell them, and split the proceeds three ways. The items were transported from the residence in defendant Gregor's automobile and most were placed in the attic of John Ewald's residence, where they were seized by the police pursuant to a search warrant.

The defendant does not deny that he participated in the removal of the various items from the residence shared by

the Hammonds and Griffiths. He admits entering the residence, through the use of Hammond's key, and admits helping to transport the items to the Ewald residence. Defendant claims that he was told the property belonged to Mr. Hammond, and that Hammond was simply looking for a place to store the property.

Defendant Gregor was charged by information with the crime of second-degree burglary of the dwelling of Fred Griffith. Defendant now contends that the undisputed consent to enter the premises given by one of the residents, Mr. Hammond, constitutes a valid defense to the burglary charge. Whether such consent constitutes a defense to a second-degree burglary charge involving a dwelling is an issue which has not previously been addressed by the courts of this state.

At the outset it should be made perfectly clear that where the dwelling house of another is involved, the second-degree burglary statute in this state does not require a "breaking," but merely an "entry." The second-degree burglary statute, RCW 9.19.020, provides as follows:

> *Every person who, with intent to commit some crime therein shall,* under circumstances not amounting to burglary in the first degree, *enter the dwelling house of another* or break and enter, or, having committed a crime therein, shall break out of, any building or part thereof, or a room or other structure wherein any property is kept for use, sale or deposit, shall be guilty of burglary in the second degree and shall be punished by imprisonment in the state penitentiary for not more than fifteen years.

(Italics ours.) The express language of this statute indicates that a person may be guilty of burglary in the second degree by simply entering the dwelling of another with the intent to commit some crime therein, and specifically provides that there must be a "breaking" only where some other type of building is involved. *Reed v. Rhay,* 323 F. 2d 498, 499 (9th Cir. 1963).

The statute's departure from the traditional common-law

"breaking" element is significant because where a conviction *does* require a showing of breaking and entry, proof that the defendant had an unlimited right to enter would constitute a defense to the charge. *State v. Corcoran,* 82 Wash. 44, 49, 143 P. 453 (1914).

Since the common-law element of "breaking" was a concept designed to keep out intruders, or to prevent the breach of a building by trespass, one given authority to enter could not be said to be committing a breaking when he entered pursuant to the authority. R. Perkins, *Criminal Law,* ch. 3, § 1, 152 (1957); W. LaFave and A. Scott, *Criminal Law* § 96, 708 (1972). By contrast, the common-law "entry" requirement was entirely a physical concept, and even the slightest entry of any part of the body was sufficient to satisfy the requirement. Clark and Marshall, *Law of Crimes* § 13.04, 1001 (7th ed. 1967); R. Perkins, *Criminal Law, supra* at 155; *see State v. Holden,* 75 Wn.2d 413, 451 P.2d 666 (1969).

■ Since the legislature has deleted the "breaking" requirement with regard to second-degree burglary of the dwelling house of another, and no words are found in the statute qualifying the character, kind, time, or manner of entry, we are of the opinion that the statutory offense of second-degree burglary of the dwelling house of another involves no unlawfulness of entry except as the entry becomes unlawful by reason of the criminal intent of the person entering. *McCreary v. State,* 25 Ariz. 1, 212 P. 336 (1923); *People v. Brittain,* 142 Cal. 8, 75 P. 314 (1904). Accordingly, we hold that the consent of Mr. Hammond to the entry did not constitute a defense, and was entirely irrelevant. We believe this holding to be in accord with the weight of authority from other jurisdictions which have considered this issue. *See* Annot., *Maintainability of burglary charge, where entry into building is made with consent,* 93 A.L.R.2d 531, 548 (1964).

Defendant next contends that there is no evidence that he ever entered the dwelling of Fred Griffith, because the

portion of the house occupied by Griffith, as opposed to Hammond, was never specified.

Defendant has recognized that there are cases where the state must prove that the area of a dwelling to which the defendant had free access was limited, or his right to enter restricted. In certain cases, as where the defendant is a cotenant along with the victim, this evidentiary requirement is simply a logical corollary of the elementary proposition that for a person to be guilty of a burglary, the entry must be of the "dwelling house of another." For example, in *State v. Rio*, 38 Wn.2d 446, 230 P.2d 308 (1951), the court held that living in one part of the premises does not establish such a right in the dwelling as to preclude prosecution and conviction for the burglary of another part. In the *Rio* case the defendant was domiciled in the upstairs portion of a home and entered the downstairs bedroom of the owner to commit an assault.

The above holding in *State v. Rio, supra,* would obviously be applicable if the state in this case had sought to charge Mr. Hammond with burglary because of his participation in the larceny within the residence he shared with Mr. Griffith. The state would then be required to show that Hammond entered a portion of the residence to which he had no right to enter. No such showing, however, is required in this case.

■ The defendant, Mr. Gregor, had no interest whatsoever in the premises. The evidence was uncontradicted that the Griffiths and Hammonds were sharing the rent and other expenses, and were living together in the residence. The record reflects that at least part of the stolen property was taken from the living room of the rented house on Lower River Road. We do not believe that the state was required to go further in this case and establish in which of the rooms each couple slept and from which room each article was removed. Proof that the victim of the burglary and his wife were residing within the house with another couple and sharing the rent and expenses was sufficient to establish that when the defendant entered the home with

the intent to steal Mr. Griffith's property, the defendant was entering the dwelling house of another.

When the defendant was arrested and booked on the charge of second-degree burglary, a Shell credit card, previously stolen in Tacoma, was found in his possession. The defendant put on testimony to the effect that he had discovered the card a few weeks prior to his arrest under the seat of a used automobile he had purchased. Defendant contended that he had intended, but had simply forgotten, to mail the credit card to the oil company. The defendant was convicted of violating 9.26A.030, the credit or identification card theft statute.[1]

Defendant's sole contention regarding this conviction is that RCW 9.26A.030 is unconstitutional. Defendant's argument is that this statute constitutes an arbitrary and unreasonable exercise of the police power because the statute does not contain express language requiring scienter, or criminal intent.

The state and the defendant each agree, and so do we, that the credit card theft statute involves moral turpitude and is therefore a crime malum in se, rather than malum prohibitum. As such, criminal intent is a necessary element of the offense. *State v. Turner*, 78 Wn.2d 276, 474 P.2d 91, 41 A.L.R.3d 493 (1970). The essence of defendant's position seems to be that the statute is invalid because the scienter requirement is not expressly provided in the statute. However, this issue has been addressed by the courts of this state before, and it has been consistently held that if the crime is not malum prohibitum, then scienter is a necessary and implied element, or in other words, "proof of scienter is *inherently included* within the elements of the crime." *Tacoma v. Lewis*, 9 Wn. App. 421, 426, 513 P.2d 85 (1973); *State v. Thrift*, 4 Wn. App. 192, 197, 480 P.2d 222 (1971).

---

[1]RCW 9.26A.030 provides, in relevant part, as follows:

"A person is guilty of credit card or identification card theft when:

"(1) He acquires, obtains, takes or withholds a credit card or identification card from the person, possession, custody or control of another without the cardholder's or issuer's consent; . . ."

In this case the information charged that the defendant, "with the intent to commit a crime, unlawfully and feloniously" withheld the credit card of another without the cardholder's consent. The trial court similarly instructed the jury that in order to find the defendant guilty of credit card theft as charged, they were required to find beyond a reasonable doubt that the defendant "did wilfully and unlawfully withhold such credit card from the person, possession, custody or control of another." The court further instructed the jury that " 'wilfully, unlawfully and feloniously' means intentionally and purposely, but not accidentally, and without and beyond the authority of law." Under these circumstances the defendant has not established that he was convicted pursuant to an unconstitutional statute.

Affirmed.

PEARSON, C.J., and PETRIE, J., concur.

Petition for rehearing denied June 3, 1974.

Review denied by Supreme Court September 25, 1974.