[No. 54115-9. En Banc. March 10, 1988.]

THE STATE OF WASHINGTON, *Petitioner*, v. JOHN F. COLLINS, *Respondent*.

*Michael J. Sullivan, Prosecuting Attorney,* and *Douglas E. Goelz, Deputy,* for petitioner.

*John Wolfe,* for respondent.

DORE, J.—This case presents the question whether the element of "entering or remaining unlawfully" in our first degree burglary statute, RCW 9A.52.020, is satisfied where the accused receives an invitation to the premises which is not expressly qualified as to area or purpose, and commits a crime while on the premises. We hold that, on a case by case basis, an implied limitation on the scope of an invitation or license may be recognized. We find such a limitation in the subject case. We reverse.

## FACTS

On March 13, 1985, John F. Collins appeared at the door of Charlotte Dungey, 72. Mrs. Dungey's mother–in–law, Ellah Dungey, 84, answered the door. Collins asked if a Mr. Thatcher lived in the house. Ellah answered that he did not, and asked her daughter–in–law if the Thatchers lived nearby. Charlotte knew the Thatchers had previously lived in the house.

Noticing that Collins had a slip of paper with the incorrect address and a phone number on it, Charlotte said,

"Wouldn't you like to call him, use the phone?" She then turned and went into the front room with Collins following her. She picked up the receiver and handed it to him.

Collins called the number and apparently received no answer. He then grabbed Charlotte by the arm and Ellah by the wrist. He dragged them into a bedroom and threw them on the bed. While he pinned Charlotte to the bed with his right leg, he pulled off Ellah's panty hose and inserted a finger in her vagina. During the struggle, Charlotte broke free and escaped to the kitchen. Collins caught her and dragged her back into the bedroom. In the struggle with Charlotte, he dislocated her shoulder.

Collins was tried and convicted of "Rape in the Second Degree, Assault in the Second Degree and Burglary in the First Degree". The trial court determined the standard sentencing range for the offenses to be 46 to 61 months based in part on its conclusion that the rape and the burglary were not "[s]eparate crimes encompassing the same criminal conduct", and so should not be treated as a single crime for the purposes of calculating Collins's offender score under former RCW 9.94A.400. Laws of 1984, ch. 209, § 25, at 1074. Collins was given a maximum term of 10 years.

The Court of Appeals reversed the burglary conviction on the ground that the element of "enters or remains unlawfully" was not proved. The court did not consider the sentencing issue because of its disposition of the burglary conviction.

### Argument

Collins remained unlawfully on the premises, because he exceeded the scope of his invitation. Collins was invited to use the telephone. Once that purpose was accomplished, his license expired, and by remaining in the house and committing crimes, he committed first degree burglary.

Burglary in the first degree is defined in RCW 9A.52-.020(1) as follows:

A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a dwelling and if, in entering or while in the dwelling or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person therein.

The term "enters or remains unlawfully" is defined in RCW 9A.52.010(3) as follows:

A person "enters or remains unlawfully" in or upon premises when he is not then licensed, invited, or otherwise privileged to so enter or remain.

The trial court found that the "unlawfully remaining" element of the crime was proved by evidence that Collins formed the intent to commit the assault and rape, once he had gained entry to the house.[1] In Verbatim Report of Proceedings, at 77, the trial court stated:

So I'm going to find that you went into the building lawfully, upon invitation, that while you were lawfully in the building you—your mind's purpose, or your purpose, changed to one of an unlawful nature, an intent to either rape or to assault, and that constitutes unlawfully remaining within the building under the context of RCW 91.50.020 [*sic*].

The trial court relied on *State v. Gregor,* 11 Wn. App. 95, 521 P.2d 960, *review denied,* 84 Wn.2d 1005 (1974) for the proposition that the element of unlawfully remaining may be inferred from the intent to commit a crime on the premises. However, *Gregor* is not on point because it involved the former second degree burglary statute, RCW 9.19.020 (repealed by Laws of 1975, 1st Ex. Sess., ch. 260, § 9A.92.010, p. 858). That statute did not contain the "unlawfully remaining" element which is at issue here, but

---

[1]Both the trial court and the Court of Appeals rejected the contention that Collins had gained entry by fraud, thereby vitiating the consent to his entry. There was no evidence offered to prove Collins' intent prior to the time he grabbed the two women. The issue is therefore whether he remained unlawfully, rather than whether he entered the house unlawfully.

required only that the defendant enter a dwelling "with intent to commit some crime therein . . ."

The trial court also relied on *State v. Gear,* 30 Wn. App. 307, 633 P.2d 930 (1981). *Gear* offers somewhat more support for the trial court's position. Defendant was accused of second degree burglary under RCW 9A.52.030, which does contain the "remains unlawfully" element. The court in *Gear* states that:

> Defendant's entering or remaining in the building was "unlawful" because of his apparent intent to commit a crime therein.

*Gear,* at 310. This suggests that the "remains unlawfully" element can be inferred from the State's successful showing of the separate element of intent to commit a crime. *Gear,* however, is distinguishable on its facts. The defendant was discovered hiding in a crawl space, in the dark, at 2 a.m. with a knife, a screwdriver and a flashlight. The burglar alarm had been set off and defendant had no keys to the building. When police ordered him out of the building, he at first refused. There was sufficient evidence, in other words, to support a finding of unlawful entry or remaining. The *Gear* court did not infer the "remains unlawfully" element solely from the defendant's criminal intent as the trial court purported to do here.

The Court of Appeals concluded that the "remains unlawfully" element could not be inferred from Collins's criminal intent, for two reasons. First, the court reasoned that to do so would make the "remains unlawfully" element superfluous. Since the Legislature is presumed not to do an unnecessary act, *State v. Wanrow,* 88 Wn.2d 221, 228, 559 P.2d 548 (1977), that element must have some content independent of the intent element. It therefore must require independent proof and cannot simply be inferred from intent. *State v. Collins,* 48 Wn. App. 95, 99, 737 P.2d 1050 (1987). Second, the court argued that inferring "remains unlawfully" from the showing of intent would transform every crime committed indoors into a burglary.

48 Wn. App. at 99. The court derived these arguments primarily from *People v. Carstensen,* 161 Colo. 249, 420 P.2d 820, 821 (1966).

The trial court's reasoning, on the other hand, is supported by cases from other jurisdictions. The California rule has long been that the defendant's criminal intent upon entry may render that entry unlawful under the burglary statute. *People v. Nunley,* 168 Cal. App. 3d 225, 214 Cal. Rptr. 82 (1985); *People v. Deptula,* 58 Cal. 2d 225, 373 P.2d 430, 23 Cal. Rptr. 366 (1962); *People v. Barry,* 94 Cal. 481, 29 P. 1026 (1892). A number of states follow the California rule. *See State v. Adams,* 94 Nev. 503, 581 P.2d 868 (1978); *State v. Baker,* 183 Neb. 499, 161 N.W.2d 864 (1968).

We decline, however, to adopt the California rule preferring instead a case by case approach. While the formation of criminal intent per se will not always render the presence of the accused unlawful, that presence may be unlawful because of an implied limitation on, or revocation of, his privilege to be on the premises.[2]

The State argues that Collins' remaining on the premises was unlawful for one or both of the following reasons. First, he exceeded the physical scope of his invitation into the house, which was limited to the front room only and did not include the bedrooms or any other part of the house. Second, he exceeded the scope of his invitation by exceeding the limited purpose of using the telephone.

---

[2]The trial court did not decide whether the defendant had exceeded the scope of his invitation. The court merely stated:

I don't think that the idea that you went into another part of the building without being licensed is apropos in this case.

Verbatim Report of Proceedings, at 77. This does not mean, however, that the conviction could not be upheld on this theory. An alternate theory can be used to uphold a result below, even if not relied on there, if it is established by the pleadings and supported by proof. *Sprague v. Sumitomo Forestry Co.,* 104 Wn.2d 751, 758, 709 P.2d 1200 (1985); *Wendle v. Farrow,* 102 Wn.2d 380, 382, 686 P.2d 480 (1984).

The Court of Appeals held that the facts were insufficient to support a finding that the invitation to Collins was limited in scope, and therefore Collins did not "remain unlawfully" when he stayed for a purpose other than using the telephone.

> The State also argues the victims invited Mr. Collins in for the limited purpose of using the telephone and he exceeded the scope of that consent by sexually assaulting the victims. However, the consent given by Charlotte was unqualified.

*State v. Collins,* at 99. In other words, the invitation was not expressly limited to a single purpose, and, since Collins' invitation was not limited in scope, he did not exceed that scope. The Court of Appeals does not separately consider the contention that Collins' invitation did not extend to the bedroom of the house, but its argument that Charlotte's invitation was unqualified disposes of this argument as well as the argument based on limited purpose.

The State relies on *State v. Rio,* 38 Wn.2d 446, 230 P.2d 308, *cert. denied,* 342 U.S. 867 (1951) to support its argument that Collins exceeded the physical scope of his privilege. In *Rio,* a farmhand lived in the owner's house, but was not allowed in certain areas of the house, including the bedrooms. He killed the owner in the owner's bedroom. *Rio,* however, does not dispose of this case. In *Rio* the defendant was a tenant with access only to his own premises and certain common areas. There was an express limitation which he exceeded. Here, Collins was a licensee, but no express limitations of the kind present in *Rio* were placed on his license.

The question, then, is whether an implied limitation on an invitation or license can be recognized in connection with the "enters or remains unlawfully" language of the burglary statute, and whether such an implied limitation was present in this case. It is clear that if such an implied limitation is recognized here, the scope of the invitation was exceeded.

■ There is precedent for recognizing an implied limitation of this kind. In *State v. McDaniels,* 39 Wn. App. 236, 692 P.2d 894 (1984), the defendant was convicted of second degree burglary in connection with the theft of a coat from a church. The Court of Appeals held that the evidence was sufficient to support a finding of entering or remaining unlawfully because:

> Undisputed evidence established that the Kelso First Assembly of God church was open solely for the purpose of worship and prayer. The testimony of a church member established that when McDaniels and his companions first entered into the church they were intentionally confronted because it did not appear they were entering the church for evening services. The church member further testified that McDaniels departed after being told that his story, that he was waiting for a friend, was not believed.

*McDaniels,* at 240. It does not appear that McDaniels was told that the church was open only for limited purposes. That limitation was plain from the circumstances, and was sufficient to support his burglary conviction.

A Wisconsin case explicitly recognizes an implied limitation on consent to entry. In *State v. Schantek,* 120 Wis. 2d 79, 353 N.W.2d 832 (Ct. App. 1984), a gas station cashier used a key provided to him by his employer to enter the gas station and take a bank bag full of money. It was undisputed that the employer had not placed any express restrictions on the defendant's presence on business property after working hours. Nevertheless the court found that defendant's presence was "nonconsensual" for the purposes of Wisconsin's burglary statute:

> We do not pretend that the limits of Schantek's right to be on the premises can always be easily defined. Nor are we prepared to state that Schantek's presence on the employment premises beyond his hours of employment for some nonemployment purpose would always be nonconsensual. We do conclude, however, that the arrangement between Schantek and his employer clearly rendered certain presence inappropriate and thus beyond the limits of the employer's consent and Schantek's

knowledge. A fair reading of the evidence does not allow for the strained conclusion that Benco gave Schantek all–encompassing consent to enter the premises at all times for all purposes—including criminal adventure.

*Schantek,* at 85.

We find this persuasive, and adopt the Wisconsin court's analysis. The record supports an inference that the invitation or license extended to Collins was limited to a specific area and a single purpose. Collins was a total stranger. Charlotte made an offer only of the use of her telephone. She led him to one particular telephone and handed it to him herself. No reasonable person could construe this as a general invitation to all areas of the house for any purpose.

A second theory, likewise to be applied on a case by case basis, supports the same result. Once Collins grabbed the two women and they resisted being dragged into the bedroom, any privilege Collins had up to that time was revoked. A case from Georgia illustrates the application of such a rule. In *Hambrick v. State,* 174 Ga. App. 444, 447, 330 S.E.2d 383, 385–86 (1985), the court wrote:

> Although the disguised caller initially had Arrington's authority to enter and remain for a friendly visit, there was sufficient evidence, including testimony of the victim's struggle with Hambrick, to create a jury question regarding whether the authority to remain ceased at the time the offensive, aggressive behavior began. When Hambrick's ulterior purpose beyond the bounds of a friendly visit became known to Arrington, who was the source of the authority, and he reacted against it, a reasonable inference could be drawn that the authority to remain ended. Arrington did not have to shout "Get out!" for this to be so. Yet Hambrick remained until he got possession of the money, far beyond the time at which the scope of the permission ended.

The same reasoning applies here.

We hold that, in some cases, depending on the actual facts of the case, a limitation on or revocation of the privilege to be on the premises may be inferred from the circumstances of the case. That neither renders part of the

statute superfluous nor converts all indoor crimes into burglaries. Not all such cases will support the inference we find justified here.

Reinstating the burglary conviction raises the question whether that crime should be considered a separate crime or the same crime for purposes of calculating Collins's offender score under the sentencing reform act for sentencing on remand. The trial court determined that the rape and the burglary were not "separate crimes constituting a single course of criminal conduct" so as to be treated as a single crime in calculating the offender score.

This court recently considered the standards governing former RCW 9.94A.400(1). That statute provided:

> Except as provided in (b) of this subsection [not applicable in this case], whenever a person is convicted of two or more offenses, the sentence range for each offense shall be determined by using all other current and prior convictions as criminal history. All sentences so determined shall be served concurrently. *Separate crimes encompassing the same criminal conduct shall be counted as one crime in determining criminal history.*

(Italics ours.) Laws of 1984, ch. 209, § 25, at 1075. The court held in *State v. Dunaway*, 109 Wn.2d 207, 214–15, 743 P.2d 1237 (1987) that:

> Therefore, in deciding if crimes encompassed the same criminal conduct, trial courts should focus on the extent to which the criminal intent, as objectively viewed, changed from one crime to the next. . . . [P]art of this analysis will often include the related issues of whether one crime furthered the other and if the time and place of the two crimes remained the same.

The court further held that crimes against separate victims are always to be considered separate crimes for the purposes of calculating the offender score under this section.

The rape and assault are separate crimes because the crimes were committed against two different victims. The burglary should not be considered a separate crime. Collins's intent did not change in the course of committing the

burglary as opposed to the assault and rape. The burglary was committed in furtherance of the attacks and occurred at the same time and in the same place. The burglary and the rape (and the burglary and the assault) are "separate crimes constituting a single course of conduct," and should be considered a single crime, for the purposes of calculating Collins's offender score under former RCW 9.94A.400(1).

## CONCLUSION

We affirm the defendant's burglary conviction. The subject case should be remanded to trial court for recalculating Collins's offender score.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.