**FILED**
**OCTOBER 23, 2018**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34716-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NATHANIEL EVAN TILTON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Nathaniel Tilton appeals from convictions for residential burglary, second degree malicious mischief, and fourth degree assault, primarily arguing that the evidence did not establish he was no longer allowed in his father's home. Since the evidence permitted the jury to draw that conclusion, we affirm.

FACTS

Mr. Tilton was released from prison with nowhere to stay. His father, Michael Tilton, allowed his 32-year-old son to stay at his residence temporarily while he got on his feet. The events that led to the criminal charges occurred within 36 hours of Mr. Tilton's release from incarceration.

Mr. Tilton was released from the mental health unit of the Monroe Correctional Complex on July 13, 2015. Some of his personal effects had been stored at his father's home during his incarceration. Mr. Tilton was allowed to temporarily stay in his father's house, where he had full run of the building, other than his father's bedroom, for an indefinite period of time while he got back on his feet and found his own place to live.

On the morning of July 14, the father and son went fishing. Nathaniel Tilton stopped fishing after ten or fifteen minutes due to a broken line and returned to his father's car. About an hour later, Michael Tilton returned to the vehicle only to see his son 60 yards away, behaving strangely. The son started yelling at the father and the two then got in the car to return home.

When the car was parked at the house, Nathaniel slugged Michael in the ear with his fist, sending the older man reeling through rose bushes and on to the ground. As Michael struggled to his feet, Nathaniel slugged him again in the other ear. The father once more fell to the ground. A neighbor saw the attack and called 911.

Michael Tilton was able to get to his house, unlock the door, and then relock it upon entering. Although he did not expressly state the fact to his son, the father believed that locking his son out of the house informed the younger man that he was no longer allowed in the dwelling. Nathaniel Tilton did not have a key to the building.

Nathaniel smashed a door to the garage and left it hanging by its upper hinge; the lower hinge had been separated from the door frame. He then kicked in the backdoor to

the house, cracking the door jamb and breaking the door latch strike plate. Entering the house, Nathaniel demanded his father's car keys, while the older man asked that he not be hit any more. The police arrived and took Nathaniel into custody. Michael Tilton was bleeding profusely from one ear. In the yard, police discovered a propane torch and a scorched light bulb in the yard. Methamphetamine remains were found inside the bulb.

Prosecutors filed charges of residential burglary, fourth degree assault, second degree malicious mischief, and possession of a controlled substance. After a contentious twelve-month period of time that included ten trial continuances, a mental health evaluation, and repeated conflicts with multiple assigned attorneys, Mr. Tilton's case eventually proceeded to jury trial.

The jury failed to reach a verdict on the drug possession charge, but convicted Mr. Tilton on the three remaining counts. The jury also entered findings that the offenses constituted domestic violence and that the victim was present at the time of the residential burglary. After supplemental instruction and deliberation, the jury found by special verdicts that the two felony offenses were committed rapidly after release from incarceration.

The court imposed an exceptional sentence of 120 months on the residential burglary count. The written findings of fact reference the jury's finding of rapid recidivism and the victim's presence during the burglary. Mr. Tilton appealed to this court, where a panel heard oral argument on the appeal.

3

ANALYSIS

The brief filed by counsel raises five[1] separate issues, while Mr. Tilton filed a statement of additional grounds (SAG) that raises a sixth issue. We address the first five issues in the order presented by counsel before turning to Mr. Tilton's issue.

*Sufficiency of the Evidence*

Mr. Tilton first argues that the evidence does not support the residential burglary count because his revocation of permission to use his father's house was not made manifest to him. We conclude that the jury was permitted to find that his permission was revoked when the older man locked him out of the house.

Familiar standards govern review of this claim. We review sufficiency challenges to see if there was evidence from which the trier of fact could find each element of the offense proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 221-222, 616 P.2d 628 (1980). The reviewing court will consider the evidence in a light most favorable to the prosecution. *Id.* Reviewing courts also must defer to the trier of fact "on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence."

---

[1] The appellate brief also seeks a waiver of costs due to indigency. In the event that the prosecutor files a cost bill our commissioner will consider the issue in accordance with RAP 14.2.

*State v. Thomas*, 150 Wn.2d 821, 874-875, 83 P.3d 970 (2004). "Credibility

determinations are for the trier of fact and are not subject to review." *Id.* at 874.

At issue in this challenge is the element of residential burglary that the accused

"enters or remains unlawfully in a dwelling." RCW 9A.52.025. An entry is unlawful if

the person was "not then licensed, invited, or otherwise privileged to so enter or remain."

RCW 9A.52.010(2). The State bears the burden of proving the entry is unlawful, but

may do so by circumstantial evidence. *State v. McDaniels*, 39 Wn. App. 236, 239-240,

692 P.2d 894 (1984).

Mr. Tilton argues that his entry was not unlawful because his father had not orally

communicated that his permission to stay in the house had been revoked. However,

permission to remain on property impliedly can be revoked or limited. *State v. Collins*,

110 Wn.2d 253, 261-262, 751 P.2d 837 (1988). Whether a limitation exists depends on

the facts of the case. *Id*. at 261.

Here, the evidence permitted the jury to determine that Nathaniel Tilton's

temporary permission[2] to reside in his father's house had been revoked. Nathaniel had no

key to the house, a fact that Michael knew when he locked the younger man out of the

building. Nathaniel did not seek his father's permission to enter the building upon

---

[2] Nathaniel Tilton was a guest in his father's house. That undisputed fact takes
this case outside of the fact pattern of *State v. Wilson*, 136 Wn. App. 596, 150 P.3d 144
(2007). The defendant in *Wilson* had signed a lease that allowed him to live in the
premises at issue there; he was not a permissive guest on the premises.

finding himself locked out, but kicked in two doors to force entry. His sole stated purpose for entering in this manner was to demand the keys to his father's car. These were not the actions of a man who believed he was still permitted in the house. More critically for this analysis, the father's actions in locking out his guest, knowing that the young man could not enter without his new permission because he had no key, is a clear expression that Nathaniel's guest status has been revoked.

Nathaniel's argument that his father was merely protecting himself by locking his son out was a proper claim to put in front of the jury, which was free to believe or reject the contention. Nonetheless, the evidence also permitted the jury to find, as it did, that the younger Tilton was no longer welcome in the residence. He had never been granted permission to enter the building for the purpose of assaulting his father and stealing property, nor could permission have been implied by the original granting of a place to temporarily stay. The evidence permitted the jury to find that locking his son out demonstrated the father's removal of permission to enter. It also permitted them to conclude that his actions in breaking into the house exceeded the scope of his original permission to reside there temporarily. Under either theory, the evidence supported the jury verdict. *Collins*, 110 Wn.2d at 260-261.

The evidence was sufficient to support the jury's verdict on the residential burglary charge.

*Conflict with Counsel*

Mr. Tilton next argues that the trial court should have inquired into whether he and his attorney were in conflict in light of evidence that they had difficulties communicating. The record of communication difficulties here did not compel the trial court to inquire into whether there was a breakdown of the attorney-client relationship, particularly in the absence of a request to do so. Instead, the record[3] strongly suggests that Mr. Tilton refused to cooperate except when he chose to do so.

If a criminal defendant is dissatisfied with appointed counsel, the defendant must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant. *State v. Stenson,* 132 Wn.2d 668, 734, 940 P.2d 1239 (1997). This court reviews a denial of a request for new counsel for abuse of discretion. *Id.* at 733. Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

However, even a breakdown in communication is insufficient to warrant substitution of counsel when a defendant "simply refuses to cooperate with his attorneys." *State v. Schaller*, 143 Wn. App. 258, 271, 177 P.3d 1139 (2007). In *State v.*

---

[3] The evidence in question is well known to the parties and need not be detailed here. The first counsel appointed for Mr. Tilton was allowed to withdraw and the next had difficulties obtaining his client's cooperation. Mr. Tilton also frequently acted out during courtroom proceedings, both before and during trial.

*Thompson*, the defendant filed a motion to dismiss counsel due to a conflict of interest and a breakdown in communication; the trial court denied his motion. On appeal, this court held that because "the conflict and communication breakdown were attributable entirely to Thompson and could not be reasonably expected to resolve with substitution of counsel, the court did not abuse its discretion by denying Thompson's motions." *State v. Thompson*, 169 Wn. App. 436, 463, 290 P.3d 996 (2012). The *Thompson* court elaborated:

> The collapse of the attorney-client relationship may so degrade the quality of the defense as to deny the accused effective representation. But that was clearly not so here. Despite Thompson's unrelenting insolence, verbal abuse, and refusal to cooperate, [defense counsel] remained a capable and determined advocate. He filed motions to suppress evidence. He vigorously opposed the State's efforts to present evidence of Thompson's past sex crimes. He used cross-examination and closing argument to highlight gaps in the State's evidence. [Defense counsel] even managed to "accommodate Mr. Thompson's view that he was a victim of a conspiracy" in the rape case. Tavel, the attorney appointed as liaison counsel, performed Thompson's direct examinations and attempted to minimize the damage resulting from his testimony while still allowing Thompson to express his view of the cases. And during closing arguments, [defense counsel] attempted to explain Thompson's obviously untruthful testimony in a way the jury might understand. Thompson was effectively represented in spite of the breakdown in the relationship.

*Id*. at 463-464 (footnotes omitted).

This case is even one step removed from those cases because Mr. Tilton never sought another new attorney and trial counsel never advised the judge that there was in fact a breakdown in communications. Instead, the record reflects that there were some

8

communication difficulties, largely of Mr. Tilton's own making, and that he would cooperate with the court or with his counsel only when he desired to do so.

In light of the entire record, which shows both occasional communication and cooperation, along with the opposite, the trial court simply was not put on notice that an actual breakdown had occurred. The trial judge is not a monitor of appointed counsel with an obligation to regularly check in to see how well the defense is progressing. The judge has an obligation to inquire upon request or when an obvious breakdown occurs in the court's presence, neither of which occurred here.

Any difficulties displayed in the record were of the defendant's own making and did not, in light of the entire record, establish an actual breakdown of communications. Appellant has not established that error occurred.

*Prosecutor's Closing Argument*

Mr. Tilton next argues that the prosecutor engaged in misconduct during closing argument. The errors that occurred were properly dealt with by the trial court.

Well settled standards also govern review of this issue. The appellant bears the burden of demonstrating prosecutorial misconduct on appeal and must establish that the conduct was both improper and prejudicial. *Stenson*, 132 Wn.2d at 718. Prejudice occurs where there is a substantial likelihood that the misconduct affected the jury's verdict. *Id.* at 718-719. The allegedly improper statements should be viewed within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed

in the argument, and the jury instructions. *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997).

Reversal is not required where the alleged error could have been obviated by a curative instruction. *State v. Gentry*, 125 Wn.2d 570, 596, 888 P.2d 1105 (1995). The failure to object constitutes a waiver unless the remark was so flagrant and ill-intentioned that it evinced an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury. *Id.*; *State v. Swan*, 114 Wn.2d 613, 665, 790 P.2d 610 (1990); *State v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988). Finally, a prosecutor has "wide latitude" in arguing inferences from the evidence presented. *Stenson*, 132 Wn.2d at 727.

The trial court granted a defense motion in limine, largely agreed to by the prosecutor, to exclude evidence of "past" drug use by the defendant and any opinion testimony by Michael Tilton concerning whether his son was under the influence. The ruling expressly exempted "demeanor" testimony and the evidence found in the front yard.

In closing, the prosecutor twice mentioned possible methamphetamine use during the incident. In the first instance, the prosecutor stated that the defendant knew what he was doing when he kicked the door in and asked "was there any evidence" that the defendant "had so much methamphetamine in him that he didn't know what he was doing?" In the second instance, the prosecutor explained to jurors that a search of Mr.

10

Tilton revealed no methamphetamine "because he had already used it all." In each instance, the court sustained defense objections, and on the second occasion the court advised the jury to disregard the statement.

The basis for the trial court's rulings is unclear—we do not know if the court believed the statements violated the ruling in limine concerning past usage or were improper inferences from the evidence. However, assuming actual error, the two comments were not prejudicial and were properly addressed by the trial court. In the context of the first statement—that defendant knew what he was doing—the negation of methamphetamine use does not appear to be prejudicial to the defendant at all. In the second instance, the court struck the remark and the defense did not seek any additional remedy. Neither remark was so prejudicial that we can say that they deprived Mr. Tilton of a fair trial.

The remaining claim involves a remark, not challenged in the trial court, likening the facts of the burglary case to entering a store with the intent to steal merchandise. The prosecutor concedes that it was error not to mention the unlawful entry element. In light of the instruction that jurors are not to treat attorney remarks as evidence and the correct statement of the law in the instructions and in the remainder of the closing arguments by both parties, there is no likelihood this one mistake rendered this trial unfair. A timely objection could easily have cured the misstatement.

Mr. Tilton has not established that the prosecutor's remarks prejudiced his right to a fair trial.

*Exceptional Sentence*

The trial court imposed an exceptional sentence on the residential burglary count by sentencing Mr. Tilton to the statutory maximum sentence of 120 months in prison. The standard range had been 63 to 84 months. Mr. Tilton argues that the sentence is clearly excessive. We disagree.

An exceptional sentence may be imposed if the trial court finds "substantial and compelling" reasons to go outside the standard range. RCW 9.94A.535. The trial court must enter written findings of fact and conclusions of law if it does impose an exceptional sentence. *Id*. A nonexclusive list of mitigating factors is recognized by statute. RCW 9.94A.535(1). However, an exceptional sentence above the standard range must be based on a recognized statutory factor. RCW 9.94A.535(2), (3).

Either party may appeal an exceptional sentence. RCW 9.94A.585(2). The statutory scheme for review of an exceptional sentence has long been in place. An exceptional sentence is reviewed to see if either (a) the reasons for the exceptional sentence are not supported by the record or do not justify an exceptional sentence, or (b) the sentence imposed is clearly excessive or clearly too lenient. RCW 9.94A.585(4).

Thus, appellate courts review to see if the exceptional sentence has a factual basis in the record, is a legally justified reason, and is not too excessive or lenient. *State v. Law*, 154 Wn.2d 85, 93, 110 P.3d 717 (2005). Differing standards of deference or nondeference apply to those three issues. *Id.*

At issue here is whether the sentence is "clearly excessive." This determination is reviewed for abuse of discretion. *Id.* Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *Junker*, 79 Wn.2d at 26.

The jury found two aggravating factors present on the burglary count—the victim was present and the crime was committed shortly after Mr. Tilton had been released from custody. The court's written findings reflect that the jury made these determinations, and also reflect that the actual period of time was not more than 36 hours. Although Mr. Tilton argues that the court needed to explain its reasoning more fully, he cites no statutory or case law requiring such or even that findings need detail the reasons for sentence length. The trial court did not need to do more than it did.

The two aggravating factors certainly were tenable bases for imposing the exceptional term that exceeded the standard range by a mere 36 months. Mr. Tilton also argues that *he* would be better served by a shorter sentence term. However, his personal preferences or needs do not determine the appropriate length for a sentence, let alone establish that a sentence is excessive.

Instead, the trial court could properly focus on the fact that the defendant, on the day following his release from prison, continued to demonstrate an inability to conform to the requirements of the law and had already lost the support of the parent who was willing to assist him. The judge could determine that a maximum sentence was required in order to protect both the needs of society and of Mr. Tilton himself. Mr. Tilton demonstrated that he was not able to care for himself and needed a structured environment. Although there was no need to demonstrate that a sentence is not excessive, the record would support such a conclusion.

However, the question presented is whether appellant has demonstrated that the sentence is clearly excessive. Mr. Tilton's arguments do not establish that the court imposed an untenable sentence. It is not *clearly* excessive.

*Financial Obligations*

The trial court imposed only the assessments that were mandatory financial obligations at the time of sentencing and waived discretionary costs. Since sentencing in this case, two of the formerly mandatory costs—the criminal filing fee and the DNA collection fee if assessed previously—have become discretionary costs. The new statutes are applicable to cases on appeal. *State v. Ramirez*, ___ Wn.2d ___, ¶¶ 30-36, 426 P.3d 714 (2018).

In light of these changes and the trial court's expressed desire to waive discretionary costs, we remand for the trial court to strike those two discretionary costs. Accordingly, we need not consider Mr. Tilton's other challenge to those assessments.

*Statement of Additional Grounds*

In his SAG, Mr. Tilton argues that his time for trial rights guaranteed by CrR 3.3 were violated when he was not accorded his trial within 60 days. In particular, he claims that trial was sometimes continued because he was under restraint in a chair in a "rubber room."

However, the right to a trial within 60 days of arraignment is subject to many exceptions, all of which serve to either reset the 60 day calculation or exclude time from that period. *See* CrR 3.3(d)(2), (e). While we need not discuss the matter exhaustively, there are several reasons this CrR 3.3 challenge fails. First, our record shows no written objection, let alone a motion to reset the trial within the perceived time for trial period. Thus, the challenge was waived. CrR 3.3(d)(3), (4). Second, Mr. Tilton also has not explained why any of the trial continuances were improper. Thus, even if there had been proper objections, these periods of time were properly excluded from the time for trial calculation. CrR 3.3(f)(2).

The SAG does not demonstrate any violation of CrR 3.3.

15

No. 34716-8-III
*State v. Tilton*

The convictions and exceptional sentence are affirmed. The matter is remanded to strike the two discretionary financial obligations.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, J.

_____
Pennell, A.C.J.

16