# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  54332-0-II |
| Respondent, | |
| v. | |
| KAREN JANET ENDECOTT, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, C.J. — Karen J. Endecott appeals her convictions for first degree burglary and theft of a firearm after she failed to comply with the terms of a pretrial diversion agreement.  Endecott argues that the pretrial diversion agreement was invalid on its face because of a mutual mistake regarding her felony history, she received ineffective assistance of counsel because her defense counsel advised her to enter into the pretrial diversion agreement, and insufficient evidence supports her convictions.

We hold that Endecott waived her right to appeal the issue of whether the pretrial diversion agreement was invalid, Endecott did not receive ineffective assistance of counsel, and the stipulated facts provide sufficient evidence to convict Endecott of first degree burglary and theft of a firearm.  Therefore, we affirm Endecott's convictions, but we remand with directions to the trial court to reform paragraph 1 of the pretrial diversion agreement to accurately reflect Endecott's felony criminal history.

FACTS

A.    PRETRIAL DIVERSION

The State charged Endecott with first degree burglary, theft of a firearm, first degree

unlawful possession of a firearm, and first degree trafficking in stolen property.  The State and

Endecott entered into a pretrial diversion agreement.  Pursuant to the pretrial diversion agreement,

the State agreed to dismiss the charges for unlawful possession of a firearm and first degree

trafficking in stolen property, and upon Endecott's successful completion of the Friendship

Diversion Program,[1] the State would then dismiss the charges for first degree burglary and theft

of a firearm.  The pretrial diversion agreement included language that stated:

> 1.    I have no prior conviction(s) for a felony offense in the State of Washington nor in any other state or country, nor have I ever successfully completed a DUI or Drug Court Program in the State of Washington or anywhere else, nor have I been convicted of a crime in another state or country which would be considered a felony in the State of Washington, nor do I have any other felony offenses pending in Washington or anywhere;
>
> . . . .
>
> 5.    I understand that if I fail to successfully comply with this agreement, I will be removed from the diversion program, and the Thurston County Prosecuting Attorney's Office will recommence prosecution of this case against me;
>
> . . . .
>
> 7.    I stipulate that this court may determine my guilt or innocence for the charges presently filed against me in this matter based solely upon the law enforcement/investigating agency's reports on which this prosecution was based, and I stipulate that the facts contained within the investigation reports are sufficient for a Trier of fact to find me guilty of the charge(s) presently filed against me in this matter.  However, I understand that any stipulation as to the sufficiency of the evidence is not binding on the Court and the Court will make an independent

---

[1] The Friendship Diversion Program monitors cases in the diversion program for the State.

determination of guilt based on the documents provided by the State at the time of any such hearing.

Clerk's Papers (CP) at 25, 27.

In the pretrial diversion agreement, Endecott also declared that she understood that the standard sentencing range for her first degree burglary charge was 87 to 116 months[2] and the standard sentencing range for her theft of a firearm charge was 77 to 102 months. The ranges were "based on the prosecuting attorney's understanding of [Endecott's] criminal history." CP at 28.

Two months later, a case manager with Friendship Diversion Services notified the State that Endecott had "failed to follow through with the enrollment process for the diversion program." CP at 34. As a result, the case manager referred Endecott's case back to the State for disposition.

The State moved to revoke Endecott's pretrial diversion agreement. After a hearing on the motion, the trial court found that Endecott did not fulfill any of the responsibilities under the agreement and revoked her pretrial diversion agreement.

B.    STIPULATED FACTS BENCH TRIAL

The trial court then held a stipulated facts bench trial to determine Endecott's guilt on the charges of first degree burglary and theft of a firearm. Endecott argued that sufficient facts did not exist to support her conviction.

As was stipulated to in the pretrial diversion agreement, the trial court considered the filed police reports, which included the Thurston County Sheriff's Office Field Report, the Thurston County Sheriff's Office Incident Report, two supplemental reports, a suspect interview with

---

[2] A standard sentencing range of 87 to 116 months for first degree burglary is appropriate for a defendant with an offender score of 9+.

Endecott, and pictures from the scene of the crime. According to the Incident Report, officers were dispatched to the victim's home where they spoke with the victim. The victim reported that Endecott had stolen items from the premises. The victim and the officers reviewed video footage from security cameras on the premises that showed Endecott entering the premises and taking items from the property. The video footage showed Endecott entering a garage and carrying items back to her car. The officers asked the victim if they knew Endecott. The victim stated that Endecott had come to the premises a few times previously.

The officers then went to Endecott's residence and spoke to her about the incident. Endecott admitted going to the property and taking items that were not hers. Endecott also admitted to taking a firearm off the wall of the home. The police reports showed that an "antique shotgun used as wall art as [a] trophy" was stolen. CP at 73 (capitalization omitted). Endecott told officers that she took some of the stolen items, including the firearm, to Billy Lemm.

The officers then spoke to Lemm. Lemm stated that Endecott showed up at his home with the items, including the firearm, and tried to give them to him.

Based on the information presented, the trial court found Endecott guilty of first degree burglary and theft of a firearm. The trial court found that Endecott did not have permission to be on the premises, entered or remained unlawfully in a building with intent to commit a crime against a person or property therein, admitted to taking property without permission, and thus committed first degree burglary. The trial court also found that Endecott "was armed with a deadly weapon, a 12 gauge shot gun" while in the building or in immediate flight therefrom. CP at 68. The trial court further found that Endecott committed theft of a firearm when she stole "a 12-gauge shotgun." CP at 68.

4

At the sentencing hearing, the trial court merged the theft of a firearm and first degree burglary charges. The trial court found that Endecott had an offender score of 16, which carried a standard sentencing range of 87 to 116 months for the first degree burglary conviction. The standard sentencing range found by the trial court based on an offender score of 16 matched the standard sentencing range reflected in Endecott's pretrial diversion agreement.

Endecott appeals.

## ANALYSIS

### A.    PRETRIAL DIVERSION AGREEMENT

Endecott argues that the pretrial diversion agreement is invalid on its face and cannot be enforced by the State. Endecott contends that the parties made a mutual mistake under paragraph 1 of the agreement, which stated that Endecott had no prior felony convictions. The State argues that Endecott waived her right to appeal this issue because she failed to raise the issue with the trial court. Alternatively, the State argues that the misstatement under paragraph 1 was a scrivener's error. We agree with the State that Endecott has waived her right to appeal this issue.

We "may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). But a party may raise a claim for the first time on appeal when it is a "manifest error affecting a constitutional right." RAP 2.5(a)(3). An error is "manifest" if an appellant shows actual prejudice. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009). "To demonstrate actual prejudice, there must be a 'plausible showing by the appellant that the asserted error had practical and identifiable consequences in the trial of the case.'" *Id.* (internal quotation marks omitted) (quoting *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007)).

Endecott's contention that the pretrial diversion agreement is invalid affects her constitutional rights. Like plea agreements, diversion agreements require that a defendant give up constitutional rights in exchange for certain benefits. *See State v. Walsh*, 143 Wn.2d 1, 7, 17 P.3d 591 (2001). "[B]ecause fundamental rights of the accused are at issue, due process considerations come into play." *Id.*

Here, Endecott gave up the right to a jury trial, to a speedy and public trial, to confront witnesses at trial, to call witnesses, to testify on her own behalf, and to appeal a determination of guilty. Therefore, Endecott's fundamental rights are at issue and her claim is of constitutional magnitude. However, Endecott's claim is not a manifest error because no mutual mistake occurred.

### 1. Legal Principles

Pretrial diversion agreements are contracts. *See State v. Kessler*, 75 Wn. App. 634, 638-39, 879 P.2d 333 (1994) (applying to a diversion agreement the "legal principles of due process as guided by analogy to such contract principles as may be appropriate and helpful").[3] The interpretation of a pretrial diversion agreement is a question of law that we review de novo. *See State v. Bisson*, 156 Wn.2d 507, 517, 130 P.3d 820 (2006) (interpreting plea agreements, which are contracts, is a question of law that the appellate court reviews de novo).

A mutual mistake occurs when both parties make the same mistake. *Simonson v. Fendell*, 101 Wn.2d 88, 91, 675 P.2d 1218 (1984). "A mistake is a belief not in accord with the facts." *Id.*

---

[3] Both the State and Endecott rely on an unpublished case, *State v. Patel*, 36732-2-III, (Wash. Ct. App. Jul. 16, 2020) (unpublished), http://www.courts.wa.gov/opinions/pdf/367321_unp.pdf, which held that pretrial diversion agreements should be treated as contracts.

Both parties must independently believe the mistaken fact. *Id.* "The test for mutuality of mistake requires the mistaken fact be the underlying basis of the entire agreement and, when discovered, that the essence of the agreement is destroyed." *Seattle Prof'l Eng'g Emp. Ass'n v. Boeing Co.*, 139 Wn.2d 824, 832, 991 P.2d 1126 (2000).

      2.      No Mutual Mistake

Endecott argues that there is a mutual mistake in the diversion agreement because the statement in paragraph 1 that Endecott had no prior convictions for a felony offense was completely false. We hold that no mutual mistake occurred because neither party relied on the statement that Endecott had no felony criminal history in reaching the pretrial diversion agreement.

Here, there is no evidence that either the State or Endecott relied on the statement that Endecott did not have a felony criminal history in agreeing to a pretrial diversion. Also, the pretrial diversion agreement shows that the State understood Endecott had a felony offender score of 9+ when it listed her standard sentencing ranges for first degree burglary (87 to 116 months) and theft of a firearm (87 to 116 months). And Endecott admits that her lengthy criminal history is reflected in the sentencing ranges stated in the pretrial diversion agreement.

Further, the essence of the pretrial diversion agreement was not destroyed by the misstatement that Endecott had no felony criminal history. The misstatement did not cause the agreement to be terminated; the agreement was terminated because Endecott failed to fulfill any of her responsibilities under the agreement. And there is no evidence that the misstatement affected the stipulated facts bench trial. Nor is there any evidence that the misstatement affected the sentencing hearing, as the trial court imposed the same sentencing range as reflected in the pretrial diversion agreement.

Endecott relies on *Goodwin*[4] and *Walsh* to contend that she should be allowed to withdraw from the pretrial diversion agreement. But both cases involved miscalculated or incorrect sentencing ranges in the plea agreement. *Goodwin*, 146 Wn.2d at 864, 867; *Walsh*, 143 Wn.2d at 4. Thus, *Goodwin* and *Walsh* are distinguishable.

Unlike in *Goodwin* and *Walsh*, Endecott's pretrial diversion agreement included accurate sentencing ranges, which were based on an offender of 9+. Endecott admits that that the sentencing ranges in the pretrial diversion agreement reflects her lengthy criminal history. And the trial court found the same sentencing range in the judgment and sentence as reflected in the pretrial diversion agreement. Therefore, unlike in *Goodwin* and *Walsh*, Endecott's offender score was not miscalculated and she was not subject to an inaccurate sentencing range as a result. The diversion agreement is not invalid because the misstatement is not a mutual mistake.

3.    Scrivener's Error

The State argues, in the alternative, that the statement in paragraph 1 of the pretrial diversion agreement is a scrivener's error. We agree.

"'A scrivener's error occurs when the intention of the parties is identical at the time of the transaction but the written agreement errs in expressing that intention.'" *Glepco, LLC v. Reinstra*, 175 Wn. App. 545, 561, 307 P.3d 744 (quoting *Reynolds v. Farmers Ins. Co.*, 90 Wn. App. 880, 885, 960 P.2d 432 (1998)), *review denied*, 179 Wn.2d 1006 (2013). A scrivener's error may be resolved through reformation of the affected contract. *See id.* at 564.

---

[4] *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 50 P.3d 618 (2002).

We hold that the statement in paragraph 1 is a scrivener's error because neither party believed that Endecott had no felony criminal history. This is shown by the sentencing ranges set forth in the pretrial diversion agreement, which accurately took into account Endecott's criminal history. Neither party objected at sentencing to the trial court's finding that Endecott had an offender score of 16, which resulted in the same sentencing ranges as reflected in the pretrial diversion agreement. Therefore, it is clear that both parties were aware of Endecott's felony criminal history at the time they entered into the pretrial diversion agreement and that they intended Endecott's criminal history to be reflected in the sentencing ranges set forth in the agreement. Thus, paragraph 1 of the pretrial diversion agreement is a scrivener's error.

4.      Conclusion

Because there is no mutual mistake and the statement in paragraph 1 is merely a scrivener's error, we hold that Endecott has not shown a manifest error and, therefore, has waived her challenge to invalidate the pretrial diversion agreement based on mutual mistake. However, we remand with directions to the trial court to reform paragraph 1 of the pretrial diversion agreement to accurately reflect Endecott's felony criminal history.

B.      INEFFECTIVE ASSISTANCE OF COUNSEL

Endecott argues that she received ineffective assistance of counsel because her defense counsel allowed her to "perjure herself by signing an inaccurate diversion agreement." Br. of Appellant at 14. We disagree.

We review claims of ineffective assistance of counsel de novo. *State v. Linville*, 191 Wn.2d 513, 518, 423 P.3d 842 (2018). To establish ineffective assistance of counsel, a defendant must show that their attorney's performance was deficient and, if it was deficient, that it was prejudicial.

*State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011), *cert. denied*, 574 U.S. 860 (2014). An ineffective assistance of counsel claim fails if the defendant fails to establish either deficient performance or prejudice. *Id.* at 33.

Performance is deficient if counsel's representation falls below an objective standard of reasonableness based on consideration of all the circumstances. *Id.* There is a strong presumption that counsel's representation was effective. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

Perjury in the first or second degree occurs when an individual makes a materially false statement, which they know to be false under an oath. RCW 9A.72.020, .030. A statement is material if it "could have affected the course or outcome of the proceeding." Former RCW 9A.72.010(1) (2001).

Here, the evidence does not support a perjury claim because the statement in paragraph 1 did not affect the course or outcome of the proceedings. First, there is no evidence that the State or Endecott relied on paragraph 1 of the pretrial diversion agreement in deciding to enter in the agreement. Second, Endecott admits that the pretrial diversion agreement accurately reflected her lengthy criminal history in the sentencing ranges set forth in the agreement. Third, the trial court did not revoke the agreement because of any misstatement in paragraph 1; rather, the trial court revoked the pretrial diversion agreement because Endecott had failed to fulfill any of her responsibilities under the agreement. And fourth, the trial court, based on Endecott's undisputed offender score, imposed the same sentencing range that was set forth in the pretrial diversion agreement. Therefore, there is no evidence that the statement in paragraph 1 of the agreement affected the decision to enter into the pretrial diversion agreement, its revocation, or the outcome

of any proceedings. Thus, the statement in paragraph 1 of the pretrial diversion agreement cannot be the basis for a perjury claim.

Endecott has not shown that defense counsel's representation fell below an objective standard of reasonableness by allowing Endecott to sign the agreement. Accordingly, we hold that Endecott's ineffective assistance of counsel claim fails.

C.     SUFFICIENCY OF THE EVIDENCE

Endecott argues that there is insufficient evidence to support her first degree burglary and theft of a firearm convictions. Specifically, Endecott claims that the State failed to prove that she was on the premises unlawfully and failed to prove that she had a deadly weapon or a firearm. We disagree.

1.     Legal Principles

Evidence is sufficient to support a conviction if any rational trier of fact can find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). The evidence must be viewed in the light most favorable to the State and interpreted most strongly against the defendant. *Id.* Circumstantial and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). A claim of insufficiency of evidence admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. *Salinas*, 119 Wn.2d at 201.

Endecott was convicted at a stipulated facts bench trial. While a stipulated facts bench trial is still a trial of the defendant's guilt or innocence, a stipulation to facts is an express waiver conceding for the purpose of the trial that the facts are true and there is no need to prove the facts. *State v. Mierz*, 127 Wn.2d 460, 469, 901 P.2d 286 (1995); *State v. Wolf*, 134 Wn. App. 196, 199,

11

139 P.3d 414 (2006). When an individual stipulates to a factual finding, they are precluded from challenging this finding on appeal. *See State v. Ellison*, 172 Wn. App. 710, 715, 291 P.3d 921 (2013)*, review denied*, 180 Wn.2d 1014 (2014).

2.      Entering Or Remaining Unlawfully In A Building

Endecott argues that the trial court did not have sufficient evidence to support its finding that she did not have permission to enter the residence. We disagree.

"A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building and if, in entering or while in the building or in immediate flight therefrom, the actor or another participant in the crime . . . is armed with a deadly weapon." RCW 9A.52.020(1). A person "enters or remains unlawfully" when they are "not then licensed, invited, or otherwise privileged to so enter or remain." RCW 9A.52.010(2). A privilege to remain may be revoked or limited depending on the circumstances of the case. *State v. Collins*, 110 Wn.2d 253, 261, 751 P.2d 837 (1988).

Endecott argues that she had permission to be on the premises because she had previously been invited onto the premises as a guest. Endecott contends that none of the residents stated that Endecott was not allowed on the premises.

The State argues that there is no evidence that Endecott had a license to enter the premises, and even if she had permission in the past to be on the premises, any permission was implicitly revoked when she began to remove property from the residence. We agree with the State.

Even if Endecott had permission to be on the premises in the past, this permission did not extend to the night of the burglary and did not include permission to remove items from the premises. This is evident from the fact that the resident of the premises contacted law enforcement.

The resident reported that Endecott came onto the property and took items. Clearly, if Endecott had the resident's permission to be on the premises to take property, they would not have called the police. We hold that sufficient evidence existed for a rational trial of fact to find beyond a reasonable doubt that Endecott "entered or remained unlawfully" on the premises.

### 3. Theft Of A Firearm And Armed With A Deadly Weapon

Endecott argues that the State failed to prove first degree burglary or theft of a firearm because it is unclear whether the antique shotgun is a firearm as the shotgun was described as a "'trophy'" and trophies are typically not functional. Br. of Appellant at 25 (quoting CP at 73). We disagree.

"A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building and if, in entering or while in the building or in immediate flight therefrom, the actor or another participant in the crime . . . is armed with a deadly weapon." RCW 9A.52.020(1). A deadly weapon may be a "loaded or unloaded firearm . . . which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm." RCW 9A.04.110(6).

A person is guilty of theft of a firearm if they commit "a theft of any firearm." RCW 9A.56.300(1). A firearm is "a weapon or device from which a projectile or projectiles may be fired by an explosive." Former RCW 9.41.010(11) (2014). A firearm does not need to be operational during the commission of a crime. *State v. Olsen*, 10 Wn. App. 2d 731, 738, 449 P.3d 1089 (2019).

13

Here, the police report referred to the antique shotgun as an "antique shotgun used as wall art as [a] trophy." CP at 73 (capitalization omitted). The report does not state that the shotgun itself was a trophy, only that the shotgun was "used" as a trophy. CP at 73 (capitalization omitted). Further, Endecott told officers that she stole the firearm. This was reinforced by Lemm, who stated that Endecott showed up at his home with the firearm. Therefore, based on the evidence presented, viewed in the light most favorable to the State and interpreted most strongly against Endecott, the shotgun, though antique, was a firearm. *See Salinas*, 119 Wn.2d at 201 (holding a claim of insufficiency of evidence admits the truth of the State's evidence and all inferences that can reasonably be drawn). We hold that there is sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that the antique shotgun is a firearm.

We affirm Endecott's convictions, but we remand with directions to the trial court to reform paragraph 1 of the pretrial diversion agreement to accurately reflect Endecott's felony criminal history.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, C.J.

We concur:

Maxa, J.

Cruser, J.

14